[April Term, 1911.]

## WYOMING CENTRAL IRRIGATION COMPANY v. FARLOW, COUNTY TREASURER.

(No. 646.)

Taxation—Irrigation Canals.

1. Where an irrigation company owning no land to be irrigated has constructed its canal for the purpose of selling perpetual water rights to the owners of the lands lying under it, and has sold or contracted to sell water rights for only part of the lands, but is holding and offering for sale water rights for the remainder of such lands, retaining by its deeds and contracts of sale title and control of the canal until it shall have sold and received payment in full for all, or 90 per cent of all the water granted to it by state permits, and providing in such deeds and contracts that when all or 90 per cent of all such water rights have been sold and paid for, the company may either transfer all its capital stock to the water right purchasers, or organize them into a water users' association and transfer to such association all the company's title and interest in the irrigation system, or in lieu of the last stated plan organize an independent operating company to which the water users shall convey their rights acquired from the irrigation company in exchange for stock in such operating company. *Held,* that although the water rights and interests in the canal might be appurtenant to the land irrigated so far as the holders of deeds and contracts from the company are concerned, the interest of the company in the canal was not appurtenant to any land, and was, therefore, taxable to the company as separate property.

2. (On petition for rehearing.) The argument that the canal should not be held subject to taxation, for the reason that to do so will tend to retard the development of the state's resources, is a proper one to be presented to the legislature, but the courts are without authority to exempt property from taxation, for that or any other reason, which the statute does not exempt.

3. The company holding the legal title to the entire canal, without the intention to part with it or its control over the canal, except in some one of the three ways stated in its deeds and contracts, which had not been done, and being the absolute owner of a large part of the canal without

owning any lands or having contracts with land owners to which the part of the canal remaining absolutely owned by the company might in the future become appurtenant, it was required in justice and equity to pay the taxes justly and equitably due before demanding that the collection of the tax upon the canal be enjoined, and, therefore, the sustaining of a demurrer to its petition for such injunction was not improper, on the ground that it should have been permitted to show the interests of others in the canal to entitle the company to relief from the tax to that extent.

4. The tax complained of not being an illegal tax in the sense that it was not authorized by law, since the interest of the company in the canal was subject to taxation, the remedy of the company for a reduction of the tax by eliminating the value of the interests of others was by application to the board of equalization for a correction of the assessment, and not by injunction to restrain the collection of the tax.

[Decided April 3, 1911.]                    (114 Pac. 635.)
[Rehearing denied June 24, 1911.]           (116 Pac. 1021.)

ERROR to the District Court, Fremont County, HON. CHARLES E. CARPENTER, Judge.

Action brought by the Wyoming Central Irrigation Company, a corporation, against Henry M. Farlow as County Treasurer and Collector of Taxes of Fremont County, to enjoin the collection of a tax levied upon the Riverton ditch, an irrigating ditch or canal constructed by the plaintiff corporation. A general demurrer to the petition was sustained in the District Court, and the plaintiff refusing to plead further, judgment was rendered for the defendant. Thereupon the plaintiff brought error in the Supreme Court to review said judgment. In the brief of counsel for plaintiff in error the facts of the case are stated substantially as follows: By a treaty made in 1904 between the United States and the Shoshone and Arapahoe tribes of Indians, a portion of the Shoshone or Wind River reservation was ceded to the United States on condition that it should be opened for settlement under the public land acts and the proceeds applied for the benefit of the Indians; such treaty

having been ratified by Act of Congress, March 3, 1905. The state secured permission from the department of the interior to enter upon the land and make surveys for canals and reservoirs for the reclamation of the entire tract susceptible of irrigation under a unified system which would best serve the interests of the state and the water users. The state advertised for bids for the construction of an irrigation system to cover such land, offering to issue permits to the best bidder who would pay to the state· the moneys expended in making the surveys aforesaid. Upon the bid of the plaintiff the contract was awarded to it, and it paid to the state the necessary amount to cover the expenses of the permits and surveys. By contract between the state and the company the latter agreed to build and construct such irrigating system, in accordance with tentative plans and specifications prepared and filed in the office of the state engineer, and to furnish water to the settlers under the system pursuant to the contract and on the terms and conditions prescribed by the state, and· the state agreed to take every precaution for the protection of the construction company. The amount to be charged for water rights to. the settlers was fixed by the contract as well as the other terms and conditions of the sale of such water rights. It was further provided that when a certain percentage of the water rights had been purchased by the settlers, the entire system should be turned over to a water users' association composed wholly of settlers. Pursuant to the contract with the state, permits were issued by the state engineer to the plaintiff in the usual form; such permits describing by legal sub-divisions the lands for the reclamation of which the plaintiff contracted to build such irrigating system, and providing that the water rights shall go direct from the state to the settlers. The permits and contract between the state and the plaintiff make the irrigation system appurtenant to the lands described in the permits and the proportionate amount of each settler appurtenant to his specific tract of land. The company was authorized to construct one of the canals, known as the Riverton ditch, for the ir-

rigation of a portion of the lands described in the permits, under a stipulation that said ditch should eventually become a lateral of the plaintiff's main canal; and it was further provided that work on the Riverton ditch should constitute a commencement and prosecution of work on the entire system.   The Riverton ditch covers about 12,000 acres of irrigable land in the vicinity of Riverton.   About two-thirds of the settlers under the Riverton ditch have contracted for water with the plaintiff in the form of contract prescribed by the state.   During the year 1909 the County of Fremont, by its proper officers and agents, assessed the Riverton ditch to the plaintiff for the purpose of taxation at a valuation of $50,000.00, and personal property belonging to the plaintiff was assessed at a valuation of $1,530.00.   The assessment on the personal property is not in dispute, and the amount of the personal property taxes was tendered by the plaintiff to the defendant and refused; the plaintiff standing ready and willing to pay the amount of the personal taxes at any time.

*P. B. Coolidge* and *M. C. McGiffin* (*E. H. Fourt* and *E. H. Stearns* of counsel), for plaintiff in error.

The contracts for water between the plaintiff and the settlers give each contracting settler a freehold interest in the ditch, even before he completes his payments and receives a deed. (Empire L. & C. Co. v. Board, 40 Pac. 449; Wyatt v. L. & W. Irr. Co., 33 Pac. 145.)   Where water is appropriated to be used on land which is at the time unsurveyed public land of the United States, the fact that the land is public unsurveyed land does not prevent a water right from attaching and becoming appurtenant thereto. (Ely v. Ferguson (Cal.), 27 Pac. 587.)   It is repugnant to the Wyoming irrigation law to tax irrigation ditches separate from lands to which they are appurtenant.   In the doctrine of prior appropriation as recognized by the constitution and statutes of Wyoming, there is no idea of a grant from the general government, but an appropriatoin can only be made for a beneficial use; a water right can

only be acquired by the person making such use; and title comes from the state instead of direct from the federal government. (Const., Art. VIII, Secs. 1, 3; Comp. Stat., Sec. 724; Moyer v. Preston, 6 Wyo. 308; Willey v. Decker, 11 Wyo. 496.)

Under the Wyoming doctrine this plaintiff is a mere agency of the settler or of the state, owning no water right, and the water rights pass directly from the state to the settlers, or to a water users' association composed wholly of settlers. The plaintiff owns no land and can acquire no water rights. Technically it has no water rights for sale. It has built a ditch which it cannot use itself, and which has no value to the plaintiff except as it may be able to collect from the land owners the amount provided by its contract with the state as compensation for the building of the ditch. The amount collected from the settlers is not a rental or continuing payment, but a payment in full for the proportionate interest of each settler in the ditch. In California the one constructing a ditch and diverting the waters of a stream thereby acquires an interest in the water right, which it can sell or rent at its option on continuing annual payments. Neither the water nor the ditch under such conditions is necessarily appurtenant to any particular tract or tracts of land. Under the Wyoming system the ditch cannot be built without a permit specifying in detail the particular land which the ditch is to serve and to which the water right is to become appurtenant. Under this system the irrigation company acquires no proprietary interest. It cannot rent water, nor furnish water to any land except the particular land described in the permit. The water right is appurtenant to this particular land, so that it cannot be sold or used separate or apart from the land to which it is appurtenant, or be used for any other purpose than that specified in the permit. (Laws 1909, Ch. 68, Sec. 1.) To tax the ditch separate from the land is unsuited to the requirements and necessities of the Wyoming system, and this practice has never heretofore obtained in this state. The same principle of decision ap-

plies to this question as in the case of Moyer v. Preston, *supra;* Willey v. Decker, *supra,* and Farm Investment Co. v. Carpenter, 61 Pac. 258. The doctrine that irrigation ditches are not taxable apart from the land to which they are appurtenant, as applied under the Wyoming system, to paraphrase the language of this court in the Carpenter case, "is founded upon the necessities growing out of natural conditions, and is absolutely essential to the development of the material resources of the country. Any other rule would offer an effectual obstacle to the settlement and growth of this region."

The plaintiff's ditch is appurtenant to certain specified lands particularly described in the permits. It has no use or value independently of the land to which it is appurtenant and cannot be taxed separate and apart from that land. It is provided in the contract between the state and plaintiff as follows: "The term 'water right' employed herein, relates to an interest as hereinbefore limited, in the irrigation works and in the permits held by the company, relating thereto, in the proportion that the area of irrigable land held by the settler bears to the entire area of irrigable land under the whole system,—it being understood that the final water right goes direct from the state to the settler, or to such organization of settlers as may be provided for the government of the system of irrigation." It follows that the plaintiff has no property right in the technical water rights under the system. An attempt may be made by opposing counsel to draw a distinction between the water right and the ditch and to claim that while a water right is not subject to taxation, the ditch is a different species of property, separate from the water right, and may be subject to a separate ownership from the water right, as was attempted by the Supreme Court of Colorado in Empire L. & C. Co. v. Board, 28 Pac. 482. But this attempted distinction was later overruled by a later decision in the same court in 40 Pac. 449. (See also Evans Ditch Co. v. Lakeside Ditch Co. (Cal.), 108 Pac. 1027; Cleary v. Skiffich, 65 Pac. 59.) Since, under the Wyoming doctrine, application to a beneficial use

is a necessary element of appropriation, a water right can
never be complete without a corresponding right in some
means of diversion and carriage to the point of use; and
by the plaintiff's contract with the state, a water right ·is
defined to include a proportionate interest in the ditch and
system of diversion and carriage.  (Wyatt v. L. & W. Irr.
Co., 33 Pac. 144.)

The company does not itself use its ditch, derives no
income from it, and receives no benefit from it until it
contracts with the settler, giving him the right to use it to
conduct water to his land.  The moment such a contract
is made the settler acquires a freehold interest in the canal
appurtenant to his land and it is taxable as a part thereof.
The remaining undivided interest which still remains with
the irrigation company has no value until it is sold.  It
would never have any value if it should not be sold, and
should, therefore, not be taxed.  Theoretically, it may be
salable, but the company has found it very difficult to sell
for the reason that the settlers have been slow to contract
for water.  It is using every effort to dispose of its re-
maining interests in the canal, but it may never be able
·to do so.  In the meantime its interest in the canal must
lie idle, and has no taxable value.  The assessment in ques-
tion purports to be levied against the ditch, and the specific
question is whether the ditch has any value independent
of the land to which it is appurtenant, which makes it a
proper and legal subject of taxation.  It has no separate
value for the reasons above stated.  (Hale v. Jefferson Co.
(Mont.), 101 Pac. 973; Ry. Co. v. Backus, 154 U. S. 439;
Canal Co. v. Rockingham, 37 Vt. 622; Lehigh &c. Co. v.
Northampton Co., 8 W. & S. 334; Boston Mfg. Co. v.
Newton, 22 Pick. 22; Lowell v. Comr's, 152 Mass. 372;
Union Water Power Co. v. Auburn, 37 L. R. A. 651; State
v. Mill Co. (Minn.), 2 N. W. 839; Fall River v. Com'rs,
125 Mass. 567; In re Del. Tax., 84 N. W. 302.)  It seems
clear that under the constitution and statutes of this state
pertaining to· water rights, an irrigation ditch has no pe-
cuniary value independent of its use in the reclamation

of the lands to which it is appurtenant, except, perhaps, in the case of a ditch company which conveys water for hire; but it is submitted that such a company could have no existence under the laws of this state. Conceding that the canal is property and that the plaintiff has a qualified interest therein, it still has no value independent of the lands to which it is appurtenant. Regarded as a separate entity there is no possible standard of value by which the ditch can be taxed, and any valuation placed upon it must be arbitrary and speculative. (Hurd v. Irr. Co., 65 L. R. A. 407.)

The plaintiff is a mere construction agency, having built the ditch under contract with the state for a public use. The property interest of the plaintiff in the ditch is a qualified interest only, and the real usufructuary interest is in the owners of the land to which the water rights are appurtenant. Such usufructuary interest only is taxable. The ordinary meaning of the word "property" is the right and interest which a man has in lands and chattels to the exclusion of others. (32 Cyc. 647.) It is held in Louisiana that there may be a concurrent existence of a qualified ownership in one party and a control and dominion over it for certain purposes in another party. (Oliver v. Lake, 3 La. Ann. 78.) So here, the only beneficial ownership of the ditch is in the settler, although plaintiff has control and dominion over it for the purpose of collecting the amount prescribed by its contract with the state until such time as it has conveyed or contracted to convey to the settler the interest which it has, thereby vesting in the settler an unqualified interest in the ditch. It goes without saying that when the full value has been assessed to the owner of one interest, no tax can properly be levied against the owner of the other interest. It has been frequently held that irrigation companies like the plaintiff are merely state agencies—public service corporations. (Coombs v. Ditch Co., 17 Colo. 146; Wiel on Water Rights, 2nd Ed. 640, *et seq.* and cases there cited.)

The full value of the ditch has already been assessed against the land to which the ditch is appurtenant. The assessment of the ditch in the name of the company amounts to double taxation and is contrary to law. (Board v. Gas Light Co., 54 Ala. 269; Osborn v. Ry. Co., 40 Conn. 491; Bank v. City, 52 N. H. 17; Golding v. Collector, 37 N. J. L. 258; Com. v. Coal Co., 156 Pa. 488; Bell v. Watson, 71 Tenn. 328; Com'rs v. Bank, 23 Minn. 280; Wyo. Const., Art. I, Sec. 28; Art XV, Sec. 11; Lowell v. Com'rs., 6 Allen, 131; Pingree v. Com'rs., 102 Mass. 76; Lowell v. Com., 88 Mass. 132.) Section 2330, Compiled Statutes, which provides that the property of corporations or companies constructing or owning canals or ditches shall be assessed to the company or corporation is not controlling in this case. If the statute is broad enough to include this case, then it would be in violation of the constitution. The statute provides that the property of ditch companies shall be assessed against the companies, but leaves open the question here as to what constitutes taxable property. The collectors of other counties have not placed the construction upon the statute that would make this property of the plaintiff taxable. It is believed that this court will take judicial notice of the custom of the collectors of other counties, and will give the highest weight and consideration to such construction placed upon a revenue law by officers charged with its enforcement. (Edwards v. Darby, 12 Wheat. 210; U. S. v. Moore, 95 U. S. 760; U. S. v. Pugh, 99 U. S. 265; Hahn v. U. S., 107 U. S. 406; U, S. v. Gilman, 8 Wall. 330.) This statute was enacted in 1887, before the adoption of our constitution. The constitutional provisions declaring the water of all natural streams to be the property of the state, and providing for the acquisition of water rights direct from the state to the settler by priority of appropriation, based on beneficial applications, render this statute obsolete and void, so far as it pertains to the taxing of irrigation canals separate and apart from the land, if such was ever its intent, for the constitutional provisions aforesaid placed ditch companies upon a new

basis and eliminated public carriers of water for hire of the California type. This view is strengthened by Section 1 of Chapter 68, Laws 1909, making water rights for irrigation purposes appurtenant to the specific land to be watered. (Cheshire v. Com'rs, 118 Mass. 386.)

The entire interest in the ditch was assessed to the company, notwithstanding the fact that prior to the assessment the company had divested itself by deed to the settlers of its qualified interest in certain proportionate parts of the ditch. To this extent at least, the assessment is not well founded. It is contrary to the custom of other states in the arid west and contrary to sound public policy to tax irrigation ditches. (Colo. Const., Art. X, Sec. 3; Comp. Laws Utah, Sec. 2784; Comp. Statutes Neb. 6469.) There are the gravest reasons founded on public policy why this assessment should not stand. If irrigation ditches, contrary to the practice of other states, are to be doubly taxed in this state capital for new irrigation projects will be attracted elsewhere.

(On Petition for Rehearing.) In sustaining the judgment of the lower court, this court overlooked and failed to pass upon the alleged erroneous assessment upon the entire taxable valuation of the ditch against the irrigation company, when it clearly appears from the petition that the plaintiff had sold and contracted to sell water rights and proportionate rights in the ditch for the irrigation of three thousand seven hundred twenty-six acres of land, and had actually executed and delivered deeds to settlers, constituting them tenants in common with the plaintiff in an undivided interest to the ditch itself. The court also failed to pass upon the question raised by that portion of the petition which shows that the entire value of the ditch was also taxed *pro rata* against the owners of the lands, no distinction being made between those who had bought undivided interests and those who had not. If the ditch is to be taxed as a whole, both against land owners and the plaintiff, a clear case of double taxation will result. The Colorado case cited in the opinion is not in point for the

reason that the systems of irrigation law in Colorado and Wyoming are essentially different respecting the acquisition of water rights in this: That under the Wyoming system an irrigation ditch, from the time the permit is granted, is appurtenant to certain specifically described land, and no other, whereas under the Colorado system, no permit is issued, and no land is specifically described; so that the ditch is not appurtenant to any land until the appropriation is complete, and even then there is no record of the land to which the ditch is appurtenant until the water rights upon the stream have been adjudicated by the courts.

No brief for defendant in error.

BEARD, CHIEF JUSTICE.

The plaintiff in error, Wyoming Central Irrigation Company, brought this action in the district court of Fremont County against Henry M. Farlow, as county treasurer and collector of taxes of said county, defendant in error, to enjoin him from collecting certain taxes on the ground that the property upon which said taxes were levied was not subject to taxation. The district court sustained a general demurrer to plaintiff's petition and entered judgment dismissing the petition. Plaintiff brings error.

It appears by the petition that plaintiff is a corporation organized and existing under the laws of Wyoming, for the object and purpose of constructing a system of irrigation canals, ditches and reservoirs upon the ceded portion of the Wind River or Shoshone Indian Reservation, in Fremont County. That said company procured from the State Engineer permits to divert sufficient of the waters of Big Wind River and its tributaries to irrigate the irrigable lands described and lying under the canals of said proposed system. That the company constructed some ten or fifteen miles of one of said canals, and has sold or contracted to sell to consumers, at $20 per acre and upwards, the perpetual right to the use of said canal for the purpose of conducting the water to which such consumers are entitled, to their lands.

Such consumers to pay to the company annually their proportionate part of the expense of maintaining the canal, not exceeding forty cents per acre per annum. The irrigable lands lying under said canal are estimated to contain 10,000 acres, and the company has sold or contracted to sell such rights for 3,725 acres, and still has for sale and is offering for sale such rights for the remainder of said irrigable lands. By the terms of the deeds and contracts between the company and such consumers it is provided that when the company shall have sold and received payment in full for all, or ninety per cent of all, the water granted said company in the permits issued by the state engineer, it shall have the right at its option to either, first: Issue to such consumers shares of its capital stock in such proportion as the rights sold bear to the whole number of rights under the system; provided, that until the transfer of all of its capital stock to purchasers of ninety per cent or all of the water rights under the system, the direction, management and control of its canals and system shall not pass to or be exercised by the owners or holders of said stock, but shall remain with the company. Or, second: When the company shall have sold and received payment in full for all or ninety per cent of all of said rights, it shall have the right to organize the water users into a water users' association, and to transfer to such association all of its right, title and interest in said system. Or, in lieu of the plan last stated the company may organize an independent operating company, to which the water users should convey the rights acquired from the company for stock in the operating company. Neither of these things has been done; and it is clear that whatever rights or interests those holding deeds or contracts from the company have in the canal in question, the company still retains a large interest therein as co-owners at least with said water users. The contention of plaintiff's counsel is, that the water rights and interests in the canal are appurtenant to the land and that the canal is not, therefore, taxable separate from the land. For the purposes of this case it may be conceded that that is true so far as the holders of deeds or

contracts from the company are concerned; but the company owns no land to which its interest in the canal could be appurtenant. In the case of Murray v. Montrose County, 28 Colo. 427, a case more nearly on all fours with the case at bar than we usually find, the Supreme Court of Colorado, speaking through Mr. Justice Gabbert, said: "True, the consumers pay nothing in the shape of annual rentals for the use of water, except such assessments as may be levied for the purpose of keeping the ditch in repair. Conceding they own an interest in the ditch, they are not as yet the sole owners. The company is a co-owner with them; the title to the ditch is still vested in the corporation. It has reserved to itself the right to retain such title until the capacity of the ditch has been sold. It still has a large number of water rights which it is offering for sale. While it may be true that at some time in the future, the ditch will be owned exclusively by those using water therefrom for the purpose of irrigating lands which they own, or in which they are interested, that is not the condition at the present time. The evident purpose of the company in still retaining title to the ditch is to derive a revenue from the future sale of water rights. That the purchasers of such rights may use the water in irrigating their lands only does not change the situation. The fact still remains that so long as the company is interested in the ditch with water rights remaining unsold, it is its purpose to make use of the ditch as a means through which to derive a profit from the sale of future water rights." In the case just quoted from, the plaintiff, Murray, was the receiver of the ditch company and claimed, as plaintiff in this case claims, that the ditch was not subject to taxation; but the court held otherwise. In this state all property not exempt by law is taxable, and ditches or other water systems owned by individuals or corporations and not appurtenant to land owned by such individual or corporation are not among the exemptions. On the contrary, "the property of corporations or companies, whether incorporated or formed in this state or not, constructing or owning canals, ditches, flumes, railways, tele-

graph lines, plank·roads, graded roads, turnpike or toll roads, bridges, ferries, and similar improvements, shall be assessed to the company or corporation." (Sec. 2330, Wyo. Comp. Stat. 1910.)

The petition failing to state facts sufficient to constitute a cause of action, the demurrer thereto was properly sustained. The judgment of the District Court is affirmed.

*Affirmed.*

SCOTT and POTTER, JJ., concur.

### ON PETITION FOR REHEARING.

BEARD, CHIEF JUSTICE.

Counsel for plaintiff in error have filed a petition for a rehearing in this case, and in their brief in support of the same still insist that the canal in question should not be held to be subject to taxation, because to so hold would tend to retard the development of the resources of the state. That would be a proper argument to present to the legislature, but the courts are without authority to exempt property from taxation, for that·or any other reason, which the statute does not exempt. It is further insisted that the demurrer to the petition should have been overruled and plaintiff in error permitted to show the extent of the interests of others in the canal, and should have afforded the company relief to that extent. To this there are two answers. First, the deeds as recited in the petition do not purport to convey any title to the canal, but only the right to use it for the· purpose of conducting water to the lands of the grantees. The language is, "the said party of the first part does hereby sell, transfer, convey and quit claim unto said party of the second part—perpetual water right—to have the use of· the water flowing through that portion of its irrigation system constructed, or to be constructed, for the irrigation of lands herein described, each water right representing and being the proportionate right to use one-half cubic foot of water per second of time, during the irrigation period of each year." And again, "said water right, so sold and

conveyed as aforesaid, shall be a proportionate right to the use, for domestic and irrigation purposes upon the lands herein described, of the water authorized by the permits of the state engineer to said party of the first part, to be appropriated through and by means of its canals, together with a proportionate right, share and interest in the use of said canals and lateral ditches with all rights incident thereto," etc.   We think it thus clearly appears from the petition that the company holds the legal title to the entire canal, and that it was not its intention to part with that title, or its control over the canal, except in some one of the three ways mentioned in the opinion; which, as there stated, has not been done.   Second, the company not only held the legal title to the entire canal, but was the absolute owner of a large part of it, and owned no lands and had no contracts with other owners of lands to which the part of it so owned might in the future become appurtenant.   Being such owner, it was required in justice and equity to pay what was justly and equitably due; and having neither paid or offered to pay any part of said taxes, it is not in a position to invoke the powers of a court of equity in ·its behalf.   (U. P. Ry. v. Ryan, 2 Wyo. 408; Horton v. Driskell, 13 Wyo. 66; National Bank v. Kimball, 103 U. S. 732.)   It has also been held by this court that where a person has some personal property subject to taxation but is assessed for more than he claims to own, the remedy is by application to the board of equalization for the correction of the assessment, and not by injunction to restrain the collection of the tax. (Board of Com'rs. v. Searight Cattle Co., 3 Wyo 777; Ricketts v. Crewdson, Treas., 13 Wyo. 284; Crewdson v. Nefsey Co., 14 Wyo. 61; See also N. P. R. R. Co. v. Patterson, 10 Mont. 90, and Delinquent Tax List v. Territory, 4 Ariz. 186.)   In the present case the tax is not an illegal tax in the sense of being a tax not authorized by law, and as we hold that the interest of the company in the canal is subject to taxation, the case comes within the rules announced in the cases above cited, and the petition does not

present a case for equitable relief by way of injunction. The former opinion is adhered to and a rehearing denied.

*Rehearing denied.*

POTTER, J., concurs.

SCOTT, J., did not sit.