NORTHSIDE CANAL CO., Limited, v. STATE BOARD OF EQUALIZATION et al.

(District Court, D. Wyoming. September 26, 1925.)

No. 1453.

1. Abatement and revival ⬉45—Suit against board to enjoin assessment and collection of taxes may be maintained, notwithstanding change in its personnel.

Suit against state board of equalization and board of county commissioners to enjoin assessment and collection of taxes may be maintained notwithstanding change in personnel of boards.

2. Taxation ⬉420—Description of water rights in tax assessment held sufficient.

Description of property in tax assessment as "equity or water rights in Jackson Lake reservoir" held not so vague and insufficient as to invalidate assessment.

3. Taxation ⬉609—Correction of insufficient description in tax assessment should be sought from proper authorities before resort to injunction suit.

Taxpayer, complaining of insufficient description of property in tax assessment, should endeavor to obtain correction of error from proper authorities before resort to injunction suit.

4. Courts ⬉371(7)—Suit to enjoin collection of alleged illegal taxes held maintainable in federal court, in view of state statute.

In view of Comp. St. Wyo. 1920, § 6302, authorizing suits to restrain collection of illegal taxes, nonresident corporation may sue in federal court to enjoin collection of alleged

illegal taxes in Wyoming, though no additional grounds for equitable relief are alleged.

5. Taxation ⬉64—"Water right" is property, and, if not appurtenant to land, is assessable for taxation.

A "water right" is property, which may be bought, sold, transferred, and subjected to lien, and, when not appurtenant to land, is assessable for taxation, under Comp. St. Wyo. 1920, § 2757.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Water Right.]

6. Taxation ⬉203—There is presumption in favor of rather than against tax on property.

There is presumption in favor of rather than against tax on property.

7. Waters and water courses ⬉3—Waters belong to state.

Under Const. Wyo. art. 8, § 1, waters within state belong to state.

8. Taxation ⬉64—Right in water stored by agency other than owner of right held subject to taxation.

Where water company and Department of the Interior under authority of Warren Act (Comp. St. §§ 4738-4740), entered into contract whereby water company paid cost of raising dam previously constructed by department under Act Cong. June 17, 1902 (Comp. St. § 4700 et seq.), and in consideration became entitled to portion of stored water, right to appropriate and store which had been acquired by Interior Department, held, water company's right in water so stored was property, subject to taxation in state, notwithstanding it was stored by agency other than one to which right belonged, and notwithstanding intended use outside of state.

9. Taxation ⬉5—Water rights held taxable against beneficial owner, though legal title remained in United States.

Where beneficial interest in water appropriated and stored by United States through Department of the Interior was, for valuable consideration, transferred to water company, held, property rights so transferred were taxable, notwithstanding legal title remained in United States.

10. Taxation ⬉6—Right to tax government-owned property and property of government agencies stated.

Tax may be laid on property of person or corporation which is agency or creature of government, so long as tax is not on its franchise or its operation, or tax may be laid on property, legal title to which is in government, though beneficial ownership is in another.

11. Taxation ⬉5—Tax on beneficial interest of property under contract with United States held not invalid.

Tax on beneficial interest in water rights, legal title to which is in United States, is not invalid, on ground that it would tend to make government's contract conveying such right less desirable.

In Equity. Suit for injunction by the Northside Canal Company, Limited, against the State Board of Equalization and others. Decree for defendants.

James R. Bothwell, of Twin Falls, Idaho, and Kinkead, Ellery & Henderson, of Cheyenne, Wyo., for plaintiff.

Albert D. Walton, U. S. Atty., of Cheyenne, Wyo., B. E. Stoutemeyer, of Boise, Idaho, and Ethelbert Ward, of Denver, Colo., for the United States.

D. J. Howell, Atty. Gen., and Ray E. Lee, Sp. Asst. Atty. Gen., J. A. Christmas, Co. Atty., of Kemmerer, Wyo., Wilford W. Neilson, Co. Atty., of Jackson, Wyo., and W. C. Mentzer, of Cheyenne, Wyo., for defendants.

KENNEDY, District Judge. This was a suit begun originally against the state of Wyoming, the state board of equalization of that state, the board of county commissioners of the county of Teton, as well as the treasurer and assessor of that county. Its general purport is to enjoin and restrain the assessment, levy, and collection of taxes by the defendants named upon the ground that such assessments are illegal. After the suit had been instituted, the United States became an intervening party plaintiff through an order of the court, and answers have been interposed, which make denials of many of the allegations of the original and intervening bills, and likewise assert rights which would have the legal import of sustaining the alleged assessment and taxes complained of. The defendants further seek by cross-bill to secure an affirmance of the tax levies and the foreclosure by a decree of this court of their liens upon the property purported to be assessed and taxed. It would seem to serve no useful purpose to rehearse at length the substance of the various pleadings, as they seem to raise issues which are more or less clearly defined, and which perhaps may be sufficiently treated in a limited statement of the facts and the legal principles applicable thereto.

Some time prior to the year 1913 the government, through its Department of the Interior, under the Act of Congress of June 17, 1902 (Comp. St. § 4700 et seq.), had constructed a dam and reservoir for the storage of water in Jackson Lake, which was then located in Lincoln county, but in territory which was afterwards by appropriate legislative action created into the county of Teton. Thereafter the predeces-

sor in interest of the plaintiff, which is an Idaho corporation having for its function the furnishing of water to Carey Act projects in the state of Idaho for irrigation, entered into a contract with the Interior Department, under the authority of what is known as the Warren Act (Act Feb. 21, 1911 [Comp. St. §§ 4738–4740]), providing in substance that the government should construct a larger reservoir at Jackson Lake, by the raising of the dam a distance of about 17 feet, the expense of the improvement to be largely paid by the company, but the work to be done under the exclusive supervision of the Interior Department. It was provided that the title and control of the reservoir and works should remain in the United States. The contract also provided for this company to have a perpetual water right in the water so stored, by being liberated from the reservoir during the late irrigating season into the channel of Snake river and thence finding its way into the reservoirs and ditches about 300 miles below. Some of the features of the contract in this respect are as follows:

"(8) Each year after the said enlarged reservoir shall have been constructed as herein provided, the United States reserving to itself the first right to a storage capacity in the enlarged reservoir equivalent to the storage capacity in the enlarged reservoir, that is, all of the water which can be stored in said reservoir up to the elevation 6752, U. S. Reclamation Service Survey and U. S. Geological Survey datum, will deliver and measure to and for the company at the outlet of said reservoir all of the available water therein in excess of said amount reserved to the United States.

"(9) That is to say, the United States shall have the first right to the waters of said reservoir to the extent of the capacity thereof up to said elevation 6752 and that as the second right from said reservoir the company shall be entitled to receive an amount of water equivalent to the amount made available by storage above said elevation 6752. As soon during the construction period as storage capacity becomes available above said elevation 6752, the company shall be entitled to such amount of stored water as becomes actually available from the storage capacity above said elevation 6752."

"(12) The water to be delivered to the company shall be turned out as required by the company during the low-water period of the irrigation season at a rate not in excess of its proportionate share of the avail-

able outlet capacity, and subject to the provisions of paragraph 8½, the United States to be notified of the rate of delivery desired in abundant time to enable it to transmit the proper instructions to its agent in charge of the dam and storage works."

A grant of 10,000 acre feet in the original reservoir was also given, in consideration of the settlement of pending litigation over irrigation projects in Idaho. The contract also reserved the option to the government to substitute water from one of its reservoirs in Idaho, in lieu of water from the Jackson Lake reservoir, making appropriate allowance for loss of volume in travel.

The Interior Department proceeded to secure a right to appropriate and store the surplus waters from the state engineer of the state of Wyoming, erected the dam, stored the waters, and presumably discharged its contractual obligation in the delivery of water to the plaintiff for application to the lands within the project. In 1923 the county assessor of Teton county purported to assess the alleged property of the plaintiff in said county, which assessment was subsequently equalized by the board of county commissioners of that county, upon the authority of the state board of equalization, in the sum of $534,000, and to levy a tax in the amount of $8,090.10. The description of the property so assessed takes the form of "equity or water rights in Jackson Lake reservoir; total value, $534,000."

Numerous points are raised by the litigants, the most of which are as interesting as they are difficult of solution. The point was raised by defendants, upon a motion to dismiss, that the suit was against the state, and therefore this court had no jurisdiction under the Eleventh Amendment, which, after the state had been dismissed out of the suit, this court overruled for reasons stated in a memorandum filed on December 2, 1924, and largely upon the strength of the following cases: Poindexter v. Greenhow, 114 U. S. 270, 5 S. Ct. 903, 962, 29 L. Ed. 185; General Oil Co. v. Crain, 209 U. S. 211, 28 S. Ct. 475, 52 L. Ed. 754; Huidekoper v. Hadley, 177 F. 1, 100 C. C. A. 395, 40 L. R. A. (N. S.) 505.

[1] It is contended by defendants that, on account of the change in some of the officials against whom the suit is directed, it cannot be maintained. This may be true as to a county official, but in so far as the suit is directed against boards attempting to perform illegal acts, it should and must be sustained. This is apparently the gist of the holding in the case of Irwin v. Wright,

258 U. S. 219, 42 S. Ct. 293, 66 L. Ed. 573, in which case a controversy arose under the laws of the state of Arizona, very similar to those of Wyoming concerning the mode of levying taxes.

[2] It is again contended by the plaintiff that the description of the property is so vague and insufficient as to make the assessment void. In the opinion of the court this cannot be sustained, as the general rule is that any description which identifies the property so that the owner cannot be misled will be sufficient, the rule being clearly stated in Cyc. as follows:

"It is essential to the validity of the assessment list and of all proceedings founded on it that it should contain a description of all the property intended to be assessed; but minute particularity is not required, any description being sufficient which identifies the particular property so clearly that the owner cannot be misled. And a detailed description will be more easily dispensed with where the assessor is unable to ascertain the exact nature of the property. It is not necessary to enumerate every item of personal property, but it has been held that the different classes mentioned in the statute should be separately listed, although, by the force of some statutes, it is now held sufficient to list all such property under the general description of 'personal property,' and an assessment even under such a heading as 'miscellany' may be considered sufficient if the owner himself knows exactly what is meant." 37 Cyc. 1051.

See, also, Wells Fargo & Co. v. State of Nevada, 248 U. S. 165, 39 S. Ct. 62, 63 L. Ed. 190.

[3] Again, if there were error in description, it would have been the duty of the plaintiff to have secured from the proper authorities a correction of any error. Ricketts v. Crewdson, 13 Wyo. 284, 79 P. 1042, 81 P. 1; Choctaw v. Mackey, 256 U. S. 531–538, 41 S. Ct. 582, 65 L. Ed. 1076. In any event, it is quite evident that the plaintiff was advised by the assessment what property of the plaintiff the authorities were attempting to assess, for the plaintiff has made very clear its reasons why a tax levy cannot be made upon any property in the state of Wyoming by the bill in this case.

[4] It is urged by the defendants that the plaintiff is not entitled to the relief sought in a federal court of equity, for the reason that such a court will not entertain a suit based merely upon the alleged illegality of the taxes, unless it is supplemented by some

additional grounds recognized as affording equitable relief, such as irreparable injury, multiplicity of suits, and the like. The Supreme Court has so held in a number of cases arising in different states of the Union, but it seems to this court that the matter has been put to rest where the question arises in a state which has specifically provided by legislative enactment for suits to restrain the collection of illegal taxes. Section 6302, Wyoming Compiled Statutes 1920, provides:

"District courts shall have jurisdiction to enjoin the illegal levy of taxes and assessments, or the collection of either, and of actions to recover back such taxes or assessments as have been collected, without regard to the amount thereof; but no recovery shall be had unless the action be brought within one year after the taxes or assessments are collected."

This statute was taken from the state of Ohio, and in the construction of a similar statute from that state the United States Supreme Court, in the case of Cummings v. National Bank, 101 U. S. 153, at page 157 (25 L. Ed. 903), uses the following language:

"But the statute of the state expressly declares that suits may be brought to enjoin the illegal levy of taxes and assessments or the collection of them. Section 5848 of the Revised Statutes of Ohio 1880; 53 Laws of Ohio, 178, §§ 1, 2. And though we have repeatedly decided in this court that the statute of a state cannot control the mode of procedure in equity cases in federal courts, nor deprive them of their separate equity jurisdiction, we have also held that, where a statute of a state created a new right or provided a new remedy, the federal courts will enforce that right either on the common law or equity side of its docket, as the nature of the new right or new remedy requires. Van Norden v. Morton, 99 U. S. 378 [25 L. Ed. 453]. Here there can be no doubt that the remedy by injunction against an illegal tax, expressly granted by the statute, is to be enforced, and can only be appropriately enforced, on the equity side of the court."

This ruling has been accepted by the Supreme Court of Wyoming as a satisfactory and controlling construction of the Wyoming statute. Standard Cattle Co. v. Baird, 8 Wyo. 144, 56 P. 598–600. The distinction between cases arising in states not having such a statute, and those states in which it is found is so clearly defined in the Cummings Case that no comment is necessary,

so that, inasmuch as the statute authorizing such an action is found among the statutes of the state of Wyoming, the federal court is thereby given equitable jurisdiction, although the bill merely asserts the illegality of the tax.

This makes it unnecessary to discuss other features alleging equitable grounds appearing in the bill. A somewhat more detailed view of the general situation arising here has been considered by the federal District Court in the case of Meyers v. Shields, 61 F. 713.

Having disposed of the so-called preliminary questions, the solution of which, otherwise than as above indicated, would have prohibited a consideration of the case upon its merits, the court will proceed to those questions which are more difficult of solution. The questions to be determined are: What property of the plaintiff is by the state officials attempted to be assessed and taxed, and if it is found to be property belonging to the plaintiff within the state of Wyoming is it taxable, first, in itself, and, second, as related to an agency of the United States? The plaintiff undoubtedly has the right to the use of water stored in the Jackson Lake reservoir by virtue of its contract with the Government. This right is well defined as to amount, time of delivery, and place of delivery.

[5] What, then, is a water right? The answer to this, in the connection in which we are now called upon to construe it, is not an easy task. It is defined in 40 Cyc. p. 540, in the following language:

"The legal right to use water; the right to use water appropriated according to law from the streams of the state for any useful or beneficial purpose. A water right has been declared and held to be properly classified as real property and not as personal property."

In the case of Johnston v. Little Horse Creek Irrigating Co., 13 Wyo. 208, 233, 79 P. 22–26 (70 L. R. A. 341, 110 Am. St. Rep. 986), the Supreme Court has used the following language:

"The appropriator secured a property right. A portion of that right it sold to be beneficially applied to other lands. It sold, not water, but the right to use water; in other words, a water right."

In speaking to the point as to whether or not a construction company under a Carey Act project, appropriating and selling water to be applied to land, had property subject to the lien laws, the Supreme Court of the state of Wyoming, in the case of Lake-

view v. Hardesty, 224 P. 853, 855, 856, says:

"Generally speaking, we may say that three kinds of rights may exist in such a case: (1) The ditch right; (2) the water right; (3) the right in, incident to, or in connection with the land. * * * While the construction company in this case cannot, perhaps, be said to be the owner of the water right to the full extent that a person who has the legal title to real property is said to be the owner thereof, yet it has the sole and exclusive right to sell it, and, if any party can be said to be the holder of the legal title to such water right, that must necessarily be the construction company, before it disposes thereof."

It will be noted that this decision does not purport to determine whether it is real or personal property. In the case of Idaho Irrigation Co. v. Gooding, 265 U. S. 518, at page 525, 44 S. Ct. 618, 621 (68 L. Ed. 1157), in speaking of water rights, the court uses the following language:

"It may be conceded that the water rights represented by these shares were appurtenant to the lands for the irrigation of which they had been acquired. Comp. Stats. Idaho, § 3018. But they were not, under the Carey Act and the laws of Idaho, inseparably appurtenant to the lands, but constituted distinct and separable property rights."

The Circuit Court of Appeals of the Ninth Circuit, in the case of Adamson v. Black Rock Power & Irrigation Co., 297 F. at page 911, speaks as follows:

"Here are perpetual water rights, purchased at high prices, granted as in themselves things, though also appurtenant to lands likewise granted; permanent obligations assumed by the purchasers to pay the upkeep and operation of the instrumentalities of water supply, whether or not the water is used; mutual covenants running with the land, and of private contracts, instead of franchise obligations; and rights in water that are the subject of barter and sale and of the dignity of estates in real property. In brief, here are corporeal things and uses in respect to water, resting in grants that convey, whether or not expressed, all other things within the power of the grantor, and that are necessary to enjoyment of the things granted.

"The sale of the perpetual use of a thing is a sale of the thing, whatever ground rent or other charge be reserved. That is true of the right to the use of water as of aught else. Appellants' deeds are of land, 'with the perpetual right to the use of water from the main canal,' 'the water right, * * * not personal property, but is appurtenant to the land,' and 'transferrable only with the land.' It is true a sale and delivery of water or of a water right may convey no right in, to, or upon source of supply or instrumentalities; but it is otherwise of a sale of perpetual water supply or permanent water right from a canal, or sale of land with appurtenant water right and service. These latter impress the source and instrumentalities in the power of the grantor and necessary to enjoyment of the water with a servitude or easement of which the grantee cannot be deprived without his consent."

In construing a statute of the state of Idaho to the effect that the right to the use of public waters which have been or may be allotted or beneficially applied shall not be considered as being a property right in itself, Judge Ailshie, writing a concurring opinion in the case of Hard v. Boise City Irrigation Co., 9 Idaho, 589, 600, 76 P. 331, at page 334, uses the following forceful language:

"It is clear to my mind that this mere declaration that the right to the use of water shall not 'in itself' be considered a property right, and shall not, therefore, be called 'property,' does not, either in law or fact, deprive or divest such right of any of the qualities or elements of property it otherwise might have. In other words, if a thing really is property, the Legislature, by saying it shall not be considered such, cannot in fact deprive it of the character and quality which constitute it property."

There is another line of cases, of which Murphy v. Kerr, 296 F. 536 (federal court of New Mexico), is an example, which would seem to fix the classification of a water right as that of an easement in the irrigation system. To a like effect appear to be the cases of Chicosa v. El Moro Ditch Co., 10 Colo. App. 276, 50 P. 731. Hayes v. Fine, 91 Cal. 391, 27 P. 772, holds that an estate in a ditch and water right is real property. On the other hand, the Supreme Court of Montana, in construing a water right as to its proper classification for taxation, in the case of Helena Waterworks v. Settles, 37 Mont. 237, 239, 95 P. 838, at page 839, says:

"In this state a water right is the legal right 'to the use of any unappropriated water of any natural stream, water course, spring, dry coulee, or other natural source of supply, and of any running water flow-

ing in the streams, rivers, canyons, and ravines of this state.' Necessarily this right is a wholly intangible thing, a mere creature of the mind, which exists only in contemplation of law. It is not a right or claim to land; neither is it the possession or ownership of land. It cannot be comprehended within the meaning of mines, minerals, quarries, or timber belonging to private owners and growing on public land, or a right or privilege appertaining thereto. Neither can it come within the meaning of the term 'improvements.' It must of necessity, therefore, for the purposes of taxation, be personal property belonging to this corporation, whose place of business and principal works are in the city of Helena and within school district No. 1."

To a like effect is the case by the Supreme Court of Verwolf v. Low Line Irrigation Co., 70 Mont. 570, 578, 227 P. 68, where the court at page 71 says:

"A water right—a right to the use of water—while it partakes of the nature of real estate (Middle Creek Ditch Co. v. Henry, 15 Mont. 558, 39 P. 1054), is not land in any sense, and, when considered alone and for the purpose of taxation, is personal property."

This court is not called upon, however, to classify a water right as to its property character, and error in classification cannot be remedied here.

Only a few cases have been selected, out of the many cases cited by counsel in their exhaustive and carefully prepared briefs, to illustrate the attitude of the courts with reference to the consideration of water rights, and, while they seem to disagree, perhaps owing to the construction of different statutes as to the classification under which a water right may be placed, yet they seem to agree quite uniformly that a water right should be recognized as property and is property.

If it, then, be accepted that a water right is property capable of sale and transfer, is it assessable for taxation as such under the laws of the state of Wyoming? An examination of the statutes of this state relating to property which is taxable shows water rights are not specifically mentioned, but it is stated in section 2757, Wyoming Compiled Statutes 1920, that "all other property, real and personal, within this state is subject to taxation. * * *" Then, after describing certain classes of property, the section ends: "And all other property not above exempted, although not herein specified." An examination of the exemp-

tions immediately preceding the above partially quoted statute, to which the word "other" applies, does not seem to cover any property which is here involved, unless it comes within the classification of property of the United States, which will be later considered.

[6] Furthermore, it would seem that the presumption would be in favor of the tax upon property rather than against it. In Providence Bank v. Billings, 4 Pet. 515–561 (7 L. Ed. 939) the following language is used:

"That the taxing power is of vital importance, that it is essential to the existence of government, are truths which it cannot be necessary to re-affirm. They are acknowledged and asserted by all. It would seem that the relinquishment of such a power is never to be presumed."

In the case of Alaska Northern Ry. Co. v. Municipality of Seward, 229 F. 667, 144 C. C. A. 77, the Circuit Court of Appeals of the Ninth Circuit, in speaking of exemptions claimed, uses the following language:

"That such exemptions are not favored, and will not be allowed unless it is made clearly to appear that such was the statutory intent, is well settled; every reasonable doubt being resolved in favor of the taxing power."

No case has been cited by counsel which seems to be directly in point as to the assessment for taxation purposes of a bare water right, shorn of all connection with irrigation works, or land to which the water is applied.

In the case of Wyoming Central Irrigation Co. v. Farlow, 19 Wyo. 68, 114 P. 635, it was apparently held that where an irrigation company, organized for the purpose of irrigating a large acreage, sold water rights which were taxed in connection with and as being appurtenant to land, yet the company was subject to taxation upon its irrigation works and unsold water rights. In the case at bar, the water secured by the plaintiff under its contract with the government has all been applied to land; but such lands are in the state of Idaho, and not in the state of Wyoming.

[7] It is assumed that the waters within the state belong to the state by virtue of the state Constitution. Article 8, § 1, Wyoming Constitution; Seattle v. Oregon, 255 U. S. 56, 41 S. Ct. 237, 65 L. Ed. 500. These waters are under control of a state agency, and the right to their appropriation may be granted or refused by that agency. In this case the water rights were granted

to the government for the purposes to which they were later applied. The right, therefore, originated with the state. The right to diversion and use in practical operation has its source in the state, by virtue of the storage of water and its release at the place of that storage. The place of enforcement of plaintiff's right would be at the place where the water is stored and released.

[8] In the face of the fact, therefore, that the right to the use of the water is a property right, which may be bought, sold, transferred, and subjected to a lien, that under certain circumstances, when water rights susceptible to sale are not sold, so as to become appurtenant to lands, they become subject to taxation, it would be like splitting hairs to hold, simply because the water is stored and held by an agency other than the one to whom the right itself belongs, that the water right in itself should not be a subject of taxation. Neither should its application to lands outside the state destroy its taxable nature, so long as it is property within the state, because, so far as the state is concerned, it only becomes nontaxable when it becomes appurtenant to lands which are taxable. This, of course, is independent of any consideration of how those rights may be affected by the legal title to the irrigation works being in the United States, or the right to the use of that water flowing out of a contract with the United States.

[9] As the court has understood the contentions of counsel for the intervening plaintiff, they are that the tax in controversy is upon property of the United States, which, of course, is not the subject of taxation, or is a tax upon a contract of the plaintiff with the United States, the sustaining of either of which contentions would be fatal to defendants' alleged right. Defendants, however, contend that they are taxing an independent property of plaintiff within the state of Wyoming, which is not property of the United States; that the tax levied is not a tax upon the contract, but is a tax upon a water right which came into being through the medium of the contract.

The books are replete with decisions in regard to what constitutes a tax upon government property, but we have found none which seems to present the exact situation here. An examination of a few of these many authorities, however, may aid in the discovery of general principles.

In the case of McCulloch v. Maryland, 4 Wheat. 316, 4 L. Ed. 579, it was held that a certain tax there levied upon a government bank established in the state of Maryland

was in the nature of a tax upon the operation of an instrumentality of the government, in consequence of which the tax was held to be unconstitutional. In the case of Weston v. City Council, 2 Pet. 449, 7 L. Ed. 481, it was held that a tax imposed by the law of a state on certificates issued for loans made to the United States was unconstitutional.

In the case of Gillespie v. State of Oklahoma, 257 U. S. 501, 42 S. Ct. 171, 66 L. Ed. 338, it was held that a net income derived from the sale of oil by the lessee of Indian lands in Oklahoma was not taxable, because of the fact that the situation constituted the lessee an instrumentality used by the United States in fulfilling its duty to its Indian wards. To substantially the same effect is Indian Territory Co. v. State of Oklahoma, 240 U. S. 522, 36 S. Ct. 453, 60 L. Ed. 779. The same rule was applied in connection with the mining of coal in Choctaw v. Harrison, 235 U. S. 292, 35 S. Ct. 27, 59 L. Ed. 234.

The case of Van Brocklin v. State of Tennessee, 117 U. S. 151, 6 S. Ct. 670, 29 L. Ed. 845, holds that lands sold for taxes, bought in and held by the United States, cannot be assessed for taxes during the period that it is so held, even though it was afterwards redeemed by the former holder. In Railroad Co. v. Peniston, 18 Wall. 5, 21 L. Ed. 787, it was held that a tax upon the property of a railroad chartered by the government, in which the government had an interest by virtue of having advanced money and holding bonds and having certain rights in regard to the transportation of mails, troops, and supplies for the government, was not in contravention of the Constitution. Thomson v. Pacific Railroad, 9 Wall. 579, 19 L. Ed. 792, and Central Pacific v. California, 162 U. S. 91, 16 S. Ct. 766, 40 L. Ed. 903.

In the case of Gromer v. Standard Dredging Co., 224 U. S. 362, 32 S. Ct. 499, 56 L. Ed. 801, it was held that the government of Porto Rico had the right to tax machinery and boats engaged in one of its harbors in fulfilling a contract with the United States. In the case of Baltimore Shipbuilding Co. v. Baltimore, 195 U. S. 375, 25 S. Ct. 50, 49 L. Ed. 242, it was held that the state had a right to tax the interest of a company owning a dry dock on land conveyed to it by the United States, notwithstanding a condition subsequent which might result in forfeiture and reversion to the United States and the right of the United States to use the dry dock for certain purposes.

In United States v. Moses, 185 F. 90, 107 C. C. A. 310, a decision from the Eighth Circuit, it was held that the property of a contractor with the United States, which an officer of the latter had taken over for the purpose of completing the contract, was not exempt from taxation. In Occidental Construction Co. v. United States, 245 F. 817, 158 C. C. A. 157, it was held that mules and equipment hired to an Indian agent were not exempt from taxation. It has been held by the United States Supreme Court that in the case of lands under passage from the government to private owners, where the legal title remains in the United States, but all steps had been taken except the issuance of ·a patent, such a condition results in a beneficial ownership to the private party which creates property subject to taxation. Wisconsin Central Railroad v. Price County, 133 U. S. 496, 10 S. Ct. 341, 33 L. Ed. 687; Northern Pacific Railway v. Myers, 172 U. S. 589, 19 S. Ct. 276, 43 L. Ed. 564; Carroll v. Safford, 3 How. 441, 11 L. Ed. 671. Mines, mining claims, and minerals, where the legal title to the lands is retained in the United States, are subject to taxation. Forbes v. Gracey, 94 U. S. 762, 24 L. Ed. 313; Elder v. Wood, 208 U. S. 226, 28 S. Ct. 263, 52 L. Ed. 464.

In the case of Trimble v. City of Seattle, 231 U. S. 683, 34 S. Ct. 218, 58 L. Ed. 435, where the state had leased certain property, it was held that that leasehold interest was not exempt from taxation, although the law exempted property of the state. The language of the court on page 690 (34 S. Ct. 219) is as follows:

"When an interest in land, whether freehold or for years, is severed from the public domain and put into private hands, the natural implication is that it goes there with the ordinary incidents of private property, and therefore is subject to being taxed."

In the case of Perry v. Norfolk, 220 U. S. 472, 31 S. Ct. 465, 55 L. Ed. 548, the Supreme Court quotes with approval from Virginia and Georgia courts, at page 479 (31 S. Ct. 467):

"For the purposes of taxation the mere legal title remaining in the landlord will be disregarded. * * * The value of property consists in its use, and he who owns the use forever, though it be on condition subsequent, is the true owner of the property for the time being."

[10] Does a review of these cases give us any light in the solution of the problem here presented? We gather that a tax may be laid upon property of a person or corporation which is a creature or agency of the government, so long as the tax is not upon its franchise nor upon its operation; that a tax may be laid upon property where the legal title is in the government, but with the beneficial ownership in another; and that. leases upon Indian lands and the benefits derived therefrom are exempt from taxation, because the government is in that regard acting in the capacity of a guardian of its Indian wards.

In the case at bar the government owns a reservoir, and by appropriation from the state of Wyoming the right to the use of certain water stored therein, without any limitation fixed by the state of Wyoming, except as to beneficial use. Under the contract with the plaintiff, the government appears to have given the plaintiff the absolute right to the use of a certain quantity of that water to be delivered to it at the reservoir in the state of Wyoming. The government by its contract parted with its right to the use of the disposed-of portion of the waters so appropriated for a valuable consideration which is equivalent to a grant to plaintiff. Under the authorities heretofore cited, if the legal title of the government in lands where there is a beneficial ownership in their use in another does not exempt that property from taxation, or the retention of the land title where mineral rights exist does not exempt those mineral rights, how can the ownership of the government of the reservoir or the control and management of it, together with the waters therein contained, affect for taxation purposes a water right which the government has granted and transferred to another?

[11] The argument that a tax upon a water right secured from the government would affect the government in its operation because it would make such contracts less desirable, is not sound. The same would be true with respect to the disposition · of any property which the government owns and holds for disposition, and if the contention should prevail any tax upon property transferred by the government to another would be an impediment to the exercise of a governmental function. The matter of making the handling of government property more lucrative is not an element in the theory of taxation. Moeller v. Gormley, 44 Wash. 465, 87 P. 507.

This court is forced to the conclusion that the water right of the plaintiff is property in its highest sense; that the plaintiff has received it by grant from the United States; that a tax levied upon it could in no sense

affect the United States, the right being a severed estate; that such right originated in the state of Wyoming, predicated upon the grant by the state of its waters, and has its operating source within the state; that in Wyoming a water right subject to sale, and not having become appurtenant to land within the state, is taxable; and that the water right of the plaintiff is here taxable.

A decree may be presented in conformity with the views herein expressed, dismissing the bill and reserving to each party his exceptions to adverse rulings, with similar decrees in cases 1454, 1455, and 1456.