# NORTHERN PACIFIC RAILWAY COMPANY *v.* MYERS.

**APPEAL FROM THE CIRCUIT COURT OF APPEALS FOR THE NINTH CIRCUIT.**

No. 214.  Argued October 21, 1898. — Decided January 23, 1899.

This bill was filed to enjoin the enforcement of a tax, imposed under the laws of Montana, upon lands granted by Congress by the act of July 2, 1864, c. 217, to the Northern Pacific Railroad Company, and acquired by the appellant on the reorganization of the company. There was a controversy as to the character of the lands taxed — whether mineral or non-mineral. The lands have never been patented or certified to the company; the company claimed that it had only a potential interest therein; and the relief sought was that the lands be adjudged not subject to such assessment and taxation until the issue of patents therefor by the United States. It was stipulated in the court below that the sole

question desired to be submitted was, whether the lands described in the bill were subject to taxation under the laws of the United States and of the State of Montana. That court sustained the taxation. In this court the position of the company was stated by its counsel as follows: "The question for decision is not whether the railway company has any interest in its grant, or in the lands in question, which may be subjected to some form of taxation; but whether the *lands themselves* are taxable: whether the present assessment which is on the lands themselves can be sustained. We may well concede that the taxing power is broad enough to reach in some form the interest of the railway company in its grant. That interest becomes confessedly a vested interest upon construction of the road. It then becomes property and may well be held subject to some form of taxation. But here the legislature authorizes a tax upon, and the assessor makes an assessment upon, the land itself by specific description: the whole legal title to each parcel being specifically and separately assessed. When the plain fact is, that neither the assessor, or the railway company can place its hand on a single specific parcel and say whether it belongs to the company or to the United States." *Held*, that, although the question submitted by stipulation had been somewhat changed in form, the same result must be reached, and the judgment of the court below be affirmed.

THIS suit involves the validity of a tax levied under the laws of the State of Montana against certain lands lying within the grant to the Northern Pacific Railroad Company, made by the act of Congress, approved July 2, 1864, c. 217. 13 Stat. 365.

It was brought in the Circuit Court of the United States for the District of Montana by the receivers of the Northern Pacific Railroad Company, a Federal corporation, and the receivers were appointed by a decree of the Federal court.

The suit proceeded in the Circuit Court in the name of said receivers to a hearing on demurrer and to a submission of the case upon bill, answer and stipulated facts. On the twelfth of November, 1896, it was stipulated and represented to the court that the Northern Pacific *Railway* Company had purchased, the property in question pending the litigation, and it was agreed and thereupon ordered by the court that the Northern Pacific *Railway* Company be substituted as plaintiff in place of the receivers. Thereupon a decree was passed on the sixteenth day of December in favor of the complainant, enjoining the enforcement and collection of the taxes. From this

decree the defendant William Myers, county treasurer, appealed to the Circuit Court of Appeals, which reversed the decree of the Circuit Court. *Myers* v. *Northern Pacific Railway*, 48 U. S. App. 620. The plaintiff railway company takes this appeal.

It was agreed "that the sole question desired to be submitted upon the pleadings, and this stipulation, is whether the lands described in the bill were subject to taxation under the laws of the United States and of the State of Montana." This being the only question submitted, the allegations of the pleadings and statements of the stipulation not bearing on that question need not be stated; and it is sufficient to note that the bill and stipulation showed the incorporation of the Northern Pacific Railroad Company by the act of July 2, 1864; its power to construct a railroad from Lake Superior to Puget Sound; the grant of land to it by section 3, which is quoted hereafter; the performance by the railroad company of all the conditions of the grant, both provisional and final, including the construction of the road and its acceptance by the United States; and the freedom of the lands from pre-emption claims and rights.

Prior to the attempted assessments and tax levies assailed, the lands were surveyed by the United States or its authority, and were reported by the surveyors making such surveys to be agricultural lands, non-mineral in character; and the company prepared, in the manner prescribed by the Secretary of the Interior, lists of the lands claimed by it under the grant, including the lands in controversy, and filed them in the proper district land office, paying the fees thereon, and attached to each of said lists was an affidavit of the land commissioner of the railroad company, in which it was affirmed "that the foregoing list of lands which I hereby select is a correct list of a portion of the public lands claimed by said Northern Pacific Railroad Company as enuring to the said company" under its grant by the act of Congress of July 2, and a joint resolution approved May 31, 1870, and "that the said lands are vacant, unappropriated, and are not interdicted mineral or reserved lands, and are of the character contemplated by the

grant, being within the limit of forty miles on each side of the line of route for a continuous distance of ——, being a portion of said lands for a section of —— miles of said railroad, commencing at —— and ending at ——."

The said lists were duly filed and their accuracy tested by the district land officers and so certified, and it was also certified that the filing was allowed; that they were surveyed public lands within the limits of the grant, " and that the same are not or is any part thereof returned and denominated as mineral land or lands." It was also certified that no claims were on file against the lands and that the fees were paid.

The lists were transmitted to the office of the Commissioner of the General Land Office.

The stipulation shows the manner of examination in the land office, and "that such lands are not patented or certified to the company until clear lists are approved by the Secretary." And the lists have not yet been examined or passed or patented to the company, and that the mineral or non-mineral character is under investigation under the provisions of the act of Congress of February 26, 1895, c. 131. 28 Stat. 683.

The company has such right, title, interest and property in the lands as was conferred upon it by the act of July, 1864, and the act and joint resolutions amendatory thereof, and acquired by a compliance with their terms.

One Thomas G. Miller, a citizen of Montana, transmitted to the Secretary of the Interior a letter signed by Thomas G. Miller as chairman citizens' executive committee, declaring that the selections of the railroad company embraced thousands of recorded mineral claims and extensive mining properties being prospected, developed and worked, " and in view of the irreparable injury which would be caused to the people and State of Montana by the premature or unlawful conveyance of title to such lands to the railroad company, I beg leave to formally file the following requests:

" That the Commissioner of the General Land Office be directed to suspend the patenting of lands in Montana to the Northern Pacific R. R. Company until the mineral or non-

mineral character of the lands selected by said company shall have been investigated and definitely ascertained and adjudicated by proper proceedings and until mineral claimants and the State of Montana shall have opportunity to be heard before the department on questions of law and fact.

" 2. That the Commissioner be directed to cause to be noted on the lists of the company's selections the tracts and townships alleged to be mineral in character by affidavits now on file in the Department of the Interior.

" Very respectfully,

" THOMAS G. MILLER,

" *Chairman Citizens' Executive Committee.*"

November 4, 1889, the Secretary of the Interior referred said letter to the Commissioner of the General Land Office, with the following indorsement: "Referred to Commissioner of Gen'l Land Office, with approval of within requests and direction to comply thereunto. Please notify me when done. Nov. 4, '89. J. W. Noble, Sec'y."

This order was not revoked prior to 1895.

The company and its receivers have been diligent to prosecute the identification of the lands, and the defendant, conceding this, denies that they have not been or are not fully defined and identified as part of the grant to the company.

Three commissioners were appointed as provided in the act of February 26, 1895, and commenced the examination and classification of said lands during the year 1895, and have classified certain of the lands as mineral, a list of which is inserted, and that the remainder of the lands have not been examined and classified. And it was admitted that other lands, a list of which is given, are in contest in the Interior Department, and that a certain section of land was decided in 1894, but subsequent to the assessment, to be mineral, and excepted from the grant, and that there were other lands to which there were claims, but which were disputed by the company, and that some contests were decided in favor of the company.

In the year 1894 the assessor of Jefferson County, Montana,

proceeded to and did assess the lands described in the complaint herein, in the manner and form prescribed by law, and described and included said lands in the assessment book of said county of Jefferson for said year.

The receivers appeared before the board of equalization and objected to the assessment, and the board refused to strike the lands from the assessment roll, and the taxes were assessed and levied against the lands with the other lands of the county; that the tax proceedings were in manner and form in all respects as required by the laws of Montana; that the taxes amounted to $3000, and that the treasurer of the county was proceeding to collect the same by sale and would so collect the same if not enjoined and restrained by the order of the court.

As a ground of relief by injunction the bill alleges: " And your orators show that said tax levies cloud the title to said described lands and impair the value thereof as an asset in the hands of your orators; that said certificates and deeds when issued, as your orators believe and show they will be, will constitute further clouds upon the title thereto. That if said lands be sold a multiplicity of suits will be necessary to quiet the title thereto and to remove the clouds thereby created."

Among the things which were asked to be adjudged at the final hearing were:

" 1. That the lands described in Schedule ' A.' hereunto annexed, and each and all thereof, were not subject to assessment and taxation by said county of Jefferson or State of Montana for the year 1894, and until the United States shall issue to said railroad company patents therefor.

" 2. That it may be ordered, adjudged and decreed that said pretended and attempted assessments and tax levies were and are null and void, and constitute a cloud upon the title to said described lands."

Section three of the act of July 2, 1864, is as follows:

" That there be, and hereby is, granted to the Northern Pacific Railroad Company, its successors and assigns, for the purpose of aiding in the construction of said railroad and

telegraph line to the Pacific Coast, . . . every alternate section of public land, not mineral, designated by odd num-bers, to the amount of twenty alternate sections per mile, on each side of said railroad line, as said company may adopt, through the Territories of the United States, and ten alter-nate sections of land per mile on each side of said railroad whenever it passes through any State, and whenever on the line thereof, the United States have full title, not reserved, sold, granted or otherwise appropriated, and free from pre-emption or other claims or rights at the time the line of said road is definitely fixed, and a plat thereof filed in the office of the Commissioner of the General Land Office; and when-ever, prior to said time, any of said sections or parts of sec-tions shall have been granted, sold, reserved, occupied, by homestead settlers, or preëmpted or otherwise disposed of, other lands shall be selected by said company in lieu thereof, under the direction of the Secretary of the Interior, in alter-nate sections, and designated by odd numbers, not more than ten miles beyond the limits of said alternate sections. . . . Provided, further, that all mineral lands be, and the same are hereby, excluded from the operation in this act, and in lieu thereof a like quantity of unoccupied and unappropriated agricultural lands, in odd numbered sections, nearest to the line of said road, may be selected as above provided; and further provided, that the word 'mineral,' when it occurs in this act, shall not be held to include iron or coal."

Section four provides for the issuing of patents on the com-pletion and acceptance of each twenty-five consecutive miles of said railroad and telegraph line.

The assignment of errors is as follows:

" The said court held that the lands described in the bill of complaint in said action were subject to taxation, although it appears from the pleadings and stipulation in said cause:

"(a.) That said lands were at the time of the assessments and tax levies complained of unpatented, and were involved in contests pending before the Interior Department over ques-tions of fact between said railway company and various set-tlers and the United States.

" (*b.*) Although it further appears from the pleadings and stipulation in said cause that said lands were not at the time of the assessment and tax levies complained of, identified and defined as lands passing under the act of Congress approved July 2, 1864, so as to be segregated from the public lands of the United States.

"(*c.*) Although it further appears from the pleadings and stipulations in said cause that the grantee, under the act of Congress approved July 2, 1864, entitled ' An act granting lands to aid in the construction of a railroad and telegraph line from Lake Superior to Puget Sound, on the Pacific Coast, by the northern route,' was not entitled to patents for said lands at the time of the assessment and tax levies complained of.

" (*d.*) Although it appears from the pleadings and stipulation in said cause that the United States possessed at the time of the assessment and tax levies complained of an interest in said lands, and each and all thereof, and that the said lands were subject to exploration for minerals as public lands of the United States.

" The said court failed and refused to hold that the lands described in the complaint were not at the time of the assessment and tax levy complained of subject to assessment or taxation.

" The said court entered an order reversing the decree of the United States Circuit Court for the District of Montana, and remanded said cause with an order to the United States Circuit Court for the District of Montana to enter a decree in favor of the above-named appellant."

*Mr. C. W. Bunn* and *Mr. A. B. Browne* for appellant. *Mr. A. T. Britton* was on their brief.

*Mr. C. B. Nolan,* Attorney General of the State of Montana, for appellee.

MR. JUSTICE McKENNA, after stating the case, delivered the opinion of the court.

The averments in the bill of complaint and the stipulation

of facts show a controversy between the railroad company and the Interior Department as to the character of the lands, whether mineral or non-mineral, taxed by the State of Montana, and the company avers "that at the time of said attempted assessments and tax levies said lands . . . had not been and are not now certified or patented to said railroad company, and the said lands were not ascertained or determined to be a part of the lands granted to said company, nor were they segregated from the public lands of the United States, and the said railroad company had and has but *a potential interest* therein." And part of the relief prayed for was "that the lands be adjudged not subject to assessment and taxation by said county of Jefferson or by the State of Montana for the year 1894, and until the United States shall issue to said railroad company patents therefor."

A similar claim was denied by the Circuit Court of Appeals for the Ninth Circuit in *Northern Pacific Railroad* v. *Wright,* 7 U. S. App. 502, and by this court in *Central Pacific Railroad* v. *Nevada,* 162 U. S. 512. It is, however, now conceded that the railroad has a taxable interest, counsel for appellant saying:

"The question for decision is not whether the railway company has any interest in its grant, or in the lands in question, which may be subjected to some form of taxation; but whether the *lands themselves* are taxable; whether the present assessment which is on the lands themselves can be sustained. We may well concede that the taxing power is broad enough to reach in some form the interest of the railway company in its grant; that interest becomes confessedly a vested interest upon construction of the road. It then becomes property, and may well be held subject to some form of taxation.

"But here the legislature authorizes a tax upon, and the assessor makes an assessment upon, the land itself by specific description; the whole legal title to each parcel being specifically and separately assessed. When the plain fact is, that neither the assessor or the railway company can place its hand on a single specific parcel and say whether it belongs to the company or to the United States."

The question which was submitted therefore by the stipulation, namely, " whether the lands described in the bill were subject to taxation under the laws of the United States and of the State of Montana," if not evaded by the concession of appellant, has changed its form; but even in the new form it seems to have the same foundation as the contention rejected in the *Nevada case, supra,* that because title may not attach to some of the lands it does not attach as to any. Whether it has such foundation we will consider.

In *Railway Company* v. *Prescott,* 16 Wall. 603; *Railway Company* v. *McShane,* 22 Wall. 444, and *Northern Pacific Railroad Company* v. *Traill County,* 115 U. S. 600, it was decided that lands sold by the United States might be taxed before they had parted with the legal title by issuing a patent; but this principle, it was said, must be understood to be applicable only to cases where the right to the patent was complete, and the equitable title was fully vested in the party without anything more to be paid or any act to be done going to the foundation of his right. In the first case the court said two acts remained to be done which might wholly defeat the right to the patent: (1) the payment of the cost of surveying; (2) a right of preëmption which would accrue if the company did not dispose of the lands within a certain time. The dependency of the right of taxation on the first condition was affirmed with the principle announced in *Railway Company* v. *McShane.* The dependency of the right of taxation on the second ground was expressly overruled.

Embarrassment to the title of the United States by a sale of the land for taxes seems to have been the concern and basis of those cases. This embarrassment was relieved, and Congress permitted taxation by the act of July 10, 1886, c. 764, 24 Stat. 143. By that act it is provided: " That no lands granted to any railroad corporation by any act of Congress shall be exempt from taxation by States, Territories and municipal corporations on account of the lien of the United States upon the same for the costs of surveying, selecting and conveying the same, or because no patent has been issued therefor; but this provision shall not apply to lands unsurveyed: *Provided,*

That any such land sold for taxes shall be taken by the purchaser subject to the lien for costs of surveying, selecting and conveying, to be paid in such manner by the purchaser as the Secretary of the Interior may by rule provide, and to all liens of the United States, all mortgages of the United States and all rights of the United States in respect to such lands: *Provided further*, That this act shall apply only to lands situated opposite to and coterminous with completed portions of said roads and in organized counties: *Provided further*, That at any sale of lands under the provisions of this act the United States may become the preferred purchaser, and in such case the land sold shall be restored to the public domain and disposed of as provided by the laws relating thereto."

This act was interpreted in *Central Pacific Railroad Co. v. Nevada, supra.* The lands involved were classified in the opinion as follows: (1) those patented; (2) those unsurveyed; (3) those surveyed but unpatented, upon which the cost of surveying had been paid; and (4) like lands upon which the cost of survey had not been paid. Applying the statute, Mr. Justice Brown, speaking for the court, said: "The principal dispute is with regard to the fourth class. . . . In view of the statute, it is difficult to see how these lands, which are the very ones provided for by the statute, can escape taxation if the State chooses to tax them."

This case establishes that the State may tax the surveyed lands, mineral or agricultural, within the place limits of the grant, and there is nothing in the case nor its principle which limits the assessment to an interest less than the title; that distinguishes the lands from a claim to them. The statute of Nevada defined the term "real estate" to include "the ownership of, or claim to, or possession of, or right of possession to any lands;" and the Supreme Court of the State had decided that to constitute a possessory claim actual possession was necessary, and, on this account, distinguished in some way surveyed from unsurveyed lands. It was urged that the distinction was not justified, and that the necessity of actual possession applied alike to both kinds and exempted both kinds from taxation, and hence it was insisted there was nothing to

tax unless the title was taxed, and that this could not be done under the decisions of this court. To this contention the opinion replied that how the interest of the railroad should be defined was not a Federal question, nor did inaptitude of definition by the Supreme Court of the State or in the application of the definition raise a Federal question. "Taxation of the lands by the State," it was said, "rested upon some theory that the railroad had a taxable interest in them. What that interest was does not concern us so long as it appears that, so far as Congress is concerned, express authority was given to tax the lands."

If this case leaves us any concern it is only to inquire what assessable interest passed by the grant. It is not necessary to detail the cases in which this court has held that railroad land grants are *in præsenti* of land to be afterwards located. Their principle reached the fullest effect and application in *Deseret Salt Co.* v. *Tarpey*, 142 U. S. 241, 316, in which it was held that the legal title passed by such grants as distinguished from merely equitable interests, and an action of ejectment was sustained by a lessee of the Central Pacific Railroad Company before patent was issued. But in *Barden* v. *Northern Pacific Railroad*, 154 U. S. 288, in a similar action recovery was denied to the Northern Pacific Railroad Company on the ground that mineral lands were not conveyed by the grant to it, but were "specifically reserved to the United States and excepted from the operations of the grant."

The accommodation of these cases is not difficult. In the *Barden case* there was a concession that the land was mineral, and there was an attempted recovery of valuable ores. In the *Deseret case* there was no such concession, and the primary effect of the grant prevailed. In the case at bar there is no such concession, and the primary effect of the grant must prevail. There is no presumption of law of what kind of lands the grant is composed. Upon its face, therefore, the relation of the railroad to every part of it is the same, and on the authority of *Deseret Salt Co.* v. *Tarpey*, ejectment may be brought for every part of it. The action, of course, may be

defeated, but it may prevail, and a title which may prevail for the company in ejectment surely may be attributed to it for taxation, to be defeated in the latter upon the same proof or concession by which it would be defeated in the former. An averment that there is a controversy about the character of lands not yielded to, an expression of doubt about it not acted on, is not sufficient. This view does not bring the railroad company to an unjust dilemma. The company has the title or nothing. In response to its obligations to the State, it must say which. If it have the title to any of the lands, this title cannot be diminished to a claim, or an interest because it has not or may not have title to others. If there is uncertainty, it must be resolved by the railroad. Suppose, to use the language of counsel, "Neither the assessor or the railway company can place its hand on a single specific parcel and say whether it belongs to the company or to the United States." We nevertheless say again, as we said by the Chief Justice in *Northern Pacific Railroad* v. *Patterson*, 154 U. S. 130, 132, "If the legal or equitable title to the lands or any of them was in the plaintiff, then it was liable for the taxes on all or some of them, and the mere fact that the title might be in controversy would not appear in itself to furnish sufficient reason why the plaintiff should not determine whether the lands or some of them were worth paying taxes on or not."

That the *Barden case* does not preclude state taxation of the lands is also manifest from its expression. Mr. Justice Field, who delivered the opinion of the court, in answer to the contention that its doctrine would have that effect, said: "So also it is said that the States and Territories through which the road passes would not be able to tax the property of the company unless they could tax the whole property, minerals as well as lands. We do not see why not. The authority to tax the property granted to the company did not give authority to tax the minerals which were not granted. The property could be appraised without including any consideration of the minerals. The value of the property, excluding the minerals, could be as well estimated as its value

including them. The property could be taxed for its value of the extent of the title which is of the land."

The averment of the answer is that this was done; that the lands were assessed and taxed for their value as agricultural lands without including the minerals in them. The replication put this in issue but the stipulation of facts does not explicitly notice it, but probably was intended to cover it by the agreement that the assessment was made in the manner and form required by the laws of Montana.

We are referred to the act of Congress of February 26, 1895, c. 131, entitled " An act to provide for the examination and classification of certain mineral lands in the States of Montana and Idaho," 28 Stat. 683, as strengthening the contention of appellants. We do not think it does. It was passed after the time at which the validity of the assessment complained of must be determined. Besides, it does not purport to define the rights of the railway company in any particular with which we are now concerned. It furnishes the Secretary of the Interior with another instrumentality — not bringing the lands to a different judgment, but to an earlier judgment.

Discovering no error in the decree of the Circuit Court of Appeals, it is

*Affirmed.*

MR. JUSTICE BREWER, MR. JUSTICE SHIRAS, MR. JUSTICE WHITE and MR. JUSTICE PECKHAM dissented.