**NORTH SIDE CANAL CO., Limited, v. STATE BOARD OF EQUALIZATION OF WYOMING et al. and seven other appeals.**

(Circuit Court of Appeals, Eighth Circuit. December 20, 1926.)

Nos. 7350–7357.

**1. Courts ⬤ᵣ371(7)—State statute authorizing suit to enjoin levy or collection of illegal taxes is enforceable in federal courts (Comp. St. Wyo. 1920, § 6302).**

A statute (Comp. St. Wyo. 1920, § 6302) giving courts of the state jurisdiction of suits to enjoin illegal levy or collection of taxes and assessments gives a new right and remedy enforceable in the federal courts within the state.

**2. Courts ⬤ᵣ359—Party does not lose rights or remedies by going into federal courts.**

A party, by going into a federal court, does not lose any right or appropriate remedy of which he might have availed himself in the state court.

**3. Taxation ⬤ᵣ98—Water right for irrigation is appurtenance of land to which water is applied, and situs for taxation is same (Comp. St. Wyo. 1920, § 794).**

A right to water for irrigation of land is an appurtenance to the land to which the water is to be applied, in view of Comp. St. Wyo.

1920, § 794, and its situs for taxation is the same.

**4. Taxation ⬤ᵣ98—Right to water for irrigation purposes held not taxable separate from land to which water is to be applied in another state (Carey Act, § 4 [Comp. St. § 4685]).**

A contract right to a part of the storage capacity of a government reservoir in Wyoming, with the right to use the water for irrigation of land in Idaho under Carey Act, § 4 (Comp. St. § 4685), under the federal statutes and the statutes of both states, are rights appurtenant to the lands to be irrigated, and do not constitute separable property subject to taxation in Wyoming.

Appeals from the District Court of the United States for the District of Wyoming; I. Blake Kennedy, Judge.

Suits by the North Side Canal Company, Limited, and by the Twin Falls Canal Company against the State Board of Equalization of the State of Wyoming, Teton County, Wyoming, and others, and against said State Board of Equalization, Lincoln County, Wyoming, and others. The United States intervened in each case. Decrees for defendants, dismissing petitions in intervention, and complainants and intervener appeal. Reversed as to complainants, with dismissal of intervening petition without prejudice.

For opinion below, see 8 F.(2d) 739.

James R. Bothwell, of Twin Falls, Idaho, and C. R. Ellery, of Cheyenne, Wyo. (W. Orr Chapman, of Twin Falls, Idaho, and Kinkead, Ellery & Henderson, of Cheyenne, Wyo., on the brief), for appellant canal companies.

Ethelbert Ward, Sp. Asst. Atty. Gen. (Albert D. Walton, U. S. Atty., and Clyde M. Watts, Asst. U. S. Atty., both of Cheyenne, Wyo., and B. E. Stoutemyer, Dist. Counsel, U. S. Reclamation Service, of Boise, Idaho, on the brief), for the United States.

W. C. Mentzer, of Cheyenne, Wyo. (J. A. Christmas, of Kemmerer, Wyo., and W. W. Neilson, of Jackson, Wyo., on the brief), for appellee counties.

Ray E. Lee, of Cheyenne, Wyo. (David J. Howell, Atty. Gen., of Wyoming, on the brief), for appellee State Board of Equalization.

Before LEWIS, Circuit Judge, and MUNGER and FARIS, District Judges.

LEWIS, Circuit Judge. These are appeals in four suits, all dismissed on final hearing, wherein the legality of certain tax levies and threatened future levies were assailed. Two of the suits were instituted by North Side Canal Company, an Idaho corporation,

one being against Lincoln County, Wyoming, its tax officials and the members of the State Board of Equalization of that State; and the other against Teton County, Wyoming, its tax officials and the members of the State Board. The other two suits were instituted by Twin Falls Canal Company, an Idaho corporation, against the same parties.

The United States intervened in each of the suits, on the claim that the levies were an interference with its functions in the reclamation of its arid lands, and on dismissal of its petitions after final hearing, it has brought separate appeals.

A statement of the principal facts developed at the hearing and a summary of the pleadings will present the situation and the issues involved.

Two Carey Act projects (Act August 18, 1894, 28 Stat. 422, § 4 [Comp. St. § 4685]), both in Idaho, one on the north side of the Snake River and one on the south side, have been carried through. Wiel on Water Rights in the Western States (3d Ed.) c. 59, shows in general the legislative provisions made in Idaho and Wyoming, accepting the terms of the Federal statute and providing methods for initiating a complete reclamation of public lands under the Carey Act. The statutes of the two States are alike. The lands in the project on the south side of the river were segregated under the Act in 1902, and those on the north side in 1906. In the latter about 185,000 acres have been brought under cultivation by the application of water, and in the former about 205,000 acres. The State of Idaho entered into a contract with a corporation for the construction of the irrigation system for each project, as its statute accepting the terms of the Carey Act provides. These corporations, called construction companies, were required by the contract to sell to persons filing upon the segregated lands susceptible of irrigation a water right or share in the irrigation system for each acre filed upon. Each share represented a carrying capacity in the canal system for delivery of water at the rate of one-eightieth of one cubic foot per second per acre. These contracts also provided for the organization of corporations to take over and manage the systems after they had been constructed. The two managing companies, later organized, are known as operating companies. Their capital stock was on the basis of one share for each acre irrigated. They are holding and operating companies of the irrigation systems for the lands reclaimed under the two projects. They brought these suits.

While reclamation was being carried on under these two Carey Act projects a reclamation project under the Act of June 17, 1902 (32 Stat. 388 [Comp. St. §§ 4700–4708]), was being developed in the same vicinity in Idaho, and to obtain water therefor the United States made application to the State of Wyoming for a permit (which was granted pursuant to the statutes of that State) to construct a dam in the south fork of Snake River in Wyoming for the purpose of impounding the waters of the stream in order to hold them for the irrigation season, then to release them into the river's channel and carry them down to the lands to be irrigated in Idaho. The dam was constructed by the United States. The waters so held were entirely for the reclamation project under the Act of June 17, 1902. In connection therewith and for the purpose of diverting the impounded waters as needed onto the lands to be reclaimed, a dam was constructed in Snake River near Minidoka, Idaho, some 300 miles, as the river flows, below the Wyoming dam. The lands thus to be reclaimed were called the Minidoka project. As reclamation of the lands in the two Carey Act projects proceeded it was discovered that the water supply theretofore obtained for them was not sufficient in amount; so on February 25, 1913, the Kuhn Irrigation & Canal Company, representing and acting in behalf of the Carey Act construction companies, entered into a contract with the United States whereby it was agreed that the latter would, at the cost and expense of the Kuhn Company, raise the height of the dam in Wyoming 17 feet, thus increasing its impounding capacity 400,000 acre feet. As originally constructed the dam was capable of storing water up to the elevation of 6752, U. S. Reclamation Service Survey and U. S. Geological Survey datum. This contract referred to the dam and the stored water as the Jackson Lake Dam and the Jackson Lake Reservoir. The Kuhn Company was to be entitled to all storage water above elevation 6752, and it was agreed that the water should be turned out as required during the low water period of the irrigation season and delivered and measured to and for the company at the outlet of the reservoir. The United States retained title to the reservoir and works, and its management and control, as provided in section 6 of the Act of June 17, 1902 (Comp. St. § 4705), and section 2 of the Act of February 21, 1911 (36 Stat. 925 [Comp. St. § 4739]), known as the Warren Act. Water, however, was not to be turned out and delivered until the Kuhn Company had paid its proportionate share of each year's cost of maintenance and management.

of the reservoir, to be ascertained in a specified way, for the preceding year, and the company notified. It was further agreed that the United States would secure the protection of the water so turned out, between the reservoir and the points of intended use, and prevent its diversion by parties not entitled thereto. These services were to be included in the total annual maintenance cost, which it was agreed should be borne proportionately by the United States and the Kuhn Company. It was further agreed that the United States might deliver to the company in place of water to which it was entitled above elevation 6752, water which the United States impounded at Minidoka, to the extent of the capacity of the reservoir there, to wit, about 60,000 acre feet, and in that event one acre foot of water at the Minidoka dam should be accepted for the Carey Act projects as the equivalent of 1½ acre feet delivered at the dam in Wyoming. In addition to the storage capacity above elevation 6752, the United States agreed to allow the Kuhn Company 10,000 acre feet storage capacity in Jackson Lake Reservoir below that elevation. This concession is said in the contract to be in consideration or settlement of a suit brought by one of the Carey Act construction companies. The contract with the Kuhn Company shows that it was made in the interest of the two Carey Act projects, that the project on the south side of the Snake River should be entitled to 19/80 of the rights and benefits that might accrue under the contract, and that on the north side to 61/80. That is, the project on the south side of the river would be entitled to 95,000 acre feet of the increased storage capacity in Jackson Lake Reservoir and that on the north side of the river to the remainder thereof, to-wit, 305,000 acre feet, and also to the 10,000 acre feet below elevation 6752. The United States raised the dam at Jackson Lake Reservoir 17 feet, as agreed in the contract. The cost of its construction was something more than $800,000, which was paid by the two Carey Act construction companies. By assignments from the Kuhn Company all of the rights and benefits which it was to receive under the contract with the United States passed to the construction companies, and ultimately these rights and the two irrigation systems passed to the two operating companies which respectively manage and control the systems, for the sole use and benefit of water users whose interests are represented by the shares which they had purchased from the construction companies. The only stockholders in the two operating companies, plaintiffs-appellants, are the landowners, their shares being represented by certificates for their respective water rights in the irrigation systems, and they maintain the companies for their mutual and proportionate benefits.

The dam at Jackson Lake Reservoir was originally constructed under permit from the State of Wyoming, as heretofore said, pursuant to the laws of that State. It was raised 17 feet in height pursuant to a like permit. The application for permit to raise the dam disclosed that the additional water to be impounded was to be used on the Carey Act projects in Idaho. In 1922, and prior thereto, Jackson Lake Reservoir was in Lincoln County, Wyoming, and it assessed and levied taxes for that year against each of the operating companies, North Side Canal Company and Twin Falls Canal Company. The Legislature of Wyoming created Teton County out of a part of the territory of Lincoln County, and after 1922 Jackson Lake Reservoir has been in Teton County. That county assessed and levied taxes against each of the operating companies for the years 1923 and 1924. Thereafter in June, 1924, those companies brought these suits. Each complaint alleges that the assessments and tax levies were illegal and void, in that the action of the tax officials was an attempt by local and State government to tax a contract of the United States, and they seek injunctions against collection of the taxes so levied, and to enjoin future levies. The answers deny that the assessments and levies were made on the contract with the United States, and allege that they were made for the purpose of taxing the water rights and storage capacity acquired by the respective plaintiffs under and by virtue of the contract, and that the rights aforesaid acquired by the plaintiffs were property rights and subject to taxation, and they admit that the defendants will continue to assess and levy taxes on those rights so acquired and will sell said rights for taxes if not paid, unless restrained by order of the court.

The United States was permitted to intervene as a plaintiff in each case. It alleged in its bills of intervention that the tax assessments and levies were void, that the dam and reservoir at Jackson Lake were owned and operated by the United States, that the contract for raising the height of the dam was entered into pursuant to the provisions of the Act of February 21, 1911, that the only rights which the plaintiff companies have were based on that Act and the contract made pursuant thereto with the Kuhn Company, that the dam and reservoir were originally constructed by the United States under the provisions of the Act of June 17, 1902, known

as the Reclamation Act, and the Acts amendatory thereof, that the assessments and levies were wrongful and unlawful, constituting an attempt to tax property of the United States and to interfere with its rights to make and carry out the Kuhn contract and with its lawful functions and its public policy in aiding in the reclamation of its arid lands. It prayed for injunctive relief. The defendants' answers to the bill in intervention deny that the United States owns or is interested in the property rights assessed and taxed, deny that the assessments and levies were made upon the contract with the Kuhn Company, and allege that the tax was not a burden upon said contract nor did it interfere with its execution nor with the functions of the United States in aiding in the reclamation of its arid lands.

There was apparent uncertainty in the minds of the tax officials who made the assessments and levies as to what the exact property was on which the assessments and levies were being made. The tax roll of Lincoln County for 1922 listed the property as "Improvements on lands not taxable." For the years 1923 and 1924 the tax roll of Teton County listed it as "Improvements on lands not taxable, water rights Jackson Lake." Appellant companies insist that these descriptions rendered the tax levies void for uncertainty, but the bills prayed for injunctions against future assessments and levies, the answers admit an intention to make future assessments and levies on what defendants claim to be property rights of the plaintiff companies within the State of Wyoming in Jackson Lake Reservoir, and counsel have argued at length as to whether the companies have any property interests there that are taxable; and so we do not think our disposition of the case should be confined to a consideration of the assessments and levies that had been made prior to the institution of the suits.

The stored waters on being released from Jackson Lake Reservoir flow in the Snake River channel through canyons in a southwesterly direction a distance of about 50 miles to the Wyoming-Idaho State line. Passing thence into the State of Idaho, the river does not return to the State of Wyoming but continues in a southwesterly course about 250 miles, all the way within the State of Idaho, before reaching the vicinity of the lands to which the waters are applied. These waters, in addition to the water received from other sources, are not sufficient in amount to supply the needs of irrigation on the reclaimed lands in the two Carey Act projects. During no season prior to the trial had the increased

storage capacity of the reservoir, provided for under the Kuhn contract, been filled.

On final hearing the court found that the two operating companies (plaintiffs) each held a water right in Jackson Lake Reservoir which, though not appurtenant to lands within the State, were taxable as a severed estate. It thereupon entered decrees in Causes 7350 and 7352, adjudging that North Side Canal Company was the owner of property subject to taxation within the State of Wyoming (in Lincoln County in 1922 and in Teton County thereafter), "to-wit, 305,000 acre feet of storage capacity and water rights in Jackson Lake Reservoir above elevation 6752 feet, U. S. Reclamation Service Survey, and 10,000 acre feet below said elevation," and that the taxes levied thereon were legal; and in Causes 7354 and 7356 that Twin Falls Canal Company was the owner of property subject to taxation within the State of Wyoming, "to-wit, 95,000 acre feet of storage capacity and water rights above the elevation of 6752 feet, U. S. Reclamation Service Survey, in Jackson Lake Reservoir," and that the taxes levied thereon were legal. The court further found that the tax levies were not made upon the contract rights evidenced by the contract between the United States and the Kuhn Company, nor did they interfere with the discharge of any governmental function. And thereupon the complaints and the petitions in intervention were all dismissed.

[1] The only ground for equitable relief stated in the complaints was that the tax levies were illegal and void; and their sufficiency for equitable relief was challenged below and that contention is advanced here. Ordinarily the objection would be good. Shelton v. Platt, 139 U. S. 591, 11 S. Ct. 646, 35 L. Ed. 273; Risty v. Railway Co. (C. C. A.) 297 F. 710. In opposition to this contention appellants rely on section 6302, Wyoming Comp. Stat. 1920, which reads:

"District courts shall have jurisdiction to enjoin the illegal levy of taxes and assessments, or the collection of either, and of actions to recover back such taxes or assessments as have been collected, without regard to the amount thereof; but no recovery shall be had unless the action be brought within one year after the taxes or assessments are collected."

This statute was construed by the Supreme Court of Wyoming in Bunten v. Rock Springs Grazing Ass'n., 29 Wyo. 461, 215 P. 244, and it was said that the section was adopted from Ohio, and under its provisions a plaintiff need not aver and show, in addition to the illegality of the tax, facts bringing the case under

some acknowledged head of equity jurisdiction, that it is sufficient to only aver that the tax is illegal. The Ohio statute was considered by the Supreme Court in Cummings v. Merchants' National Bank, 101 U. S. 153, 25 L. Ed. 903, and the court held that the statute created a new right and provided a new remedy, and that right and remedy would be enforced in the Federal court within the State creating the new right and remedy. The Court of Appeals for the Sixth Circuit has followed the Cummings Case in applying the Ohio statute. Grether v. Wright (C. C. A.) 75 F. 742; Mercantile National Bank v. Hubbard (C. C. A.) 105 F. 809; McKnight v. Dudley (C. C. A.) 148 F. 204. A like statute of Arkansas has been followed by the Federal court sitting in that State; Mudge v. McDougal (D. C.) 222 F. 562. In Davis v. Gray, 16 Wall. 203, 21 L. Ed. 447, it is said: [2] "A party by going into a national court does not lose any right or appropriate remedy of which he might have availed himself in the State courts of the same locality."

And in Dawson v. Kentucky Distilleries & Warehouse Co., 255 U. S. 288, 41 S. Ct. 272, 65 L. Ed. 638, it is said:

"And if the equitable remedy was available in the State courts it was not lost by suing in the Federal court."

See also Darragh v. H. Wetter Mfg. Co. (C. C. A.) 78 F. 7; Brun v. Mann (C. C. A.) 151 F. 145, 12 L. R. A. (N. S.) 154.

[3, 4] On the merits the prime inquiry is, whether the two Idaho operating companies, or their beneficiary stockholders, held or owned title to property or property rights in Jackson Lake Reservoir subject to taxation in Wyoming. The dam and reservoir were not and could not be taxed, admittedly they belong to the United States; nor is it claimed that the corpus of the impounded water can be taxed. But it is contended for defendants that plaintiffs obtained for their stockholders through the Kuhn contract with the United States the perpetual use of certain waters to be stored in Jackson Lake Reservoir and the perpetual and exclusive use of certain storage capacity therein, that they acquired an easement in the reservoir; and that the rights so obtained were property and property rights subject to taxation in Wyoming. In substance this claim seems to be that the means and facilities necessary to the storage, diversion and transportation of water to the place of application are property and constitute taxable entities. A right to use water for the irrigation of arid lands is a property right in both Wyoming and Idaho. Such rights are acquired by appropriation, that is, by the diversion and application of water to beneficial uses. It may be diverted from the natural flow of the stream, and for that purpose diversion structures, head-gates and carrying canals to the places of application are necessary. If flood waters are taken they must be impounded in artificial reservoirs provided for that purpose or by damming the stream and thereafter releasing them into carrying canals or ditches for delivery at the points of application. There is, of course, a right in the use of these structures and in their protection. But they are valueless except for the intended purpose; and they are integral and indispensable parts of the water right itself, which under the general rule in the arid States becomes appurtenant to the lands to which the water is applied. Water could not be applied to the lands to be irrigated unless diverted and brought to the place of application, and the means for doing so are indispensable to the right to use them. It was in recognition of rights so to be acquired that the Warren Act was passed, under which the United States was authorized through its Reclamation Service to raise the dam at Jackson Lake Reservoir; and it is the expressed intention of that Act, and also of the statutes of Wyoming passed in recognition and acceptance of the Carey Act, that the impounded waters may be used only on the lands for which they are to be impounded. A clause in the first section of the Warren Act (Comp. St. § 4738) reads:

"Water so impounded, stored, or carried under any such contract [the contract with the Kuhn Company], shall be for the purpose of distribution to individual water users by the party with whom the contract is made."

And the Wyoming statute accepting the Carey Act reads:

"The water rights to all lands acquired under the provisions of this chapter shall attach to and become appurtenant to the land as soon as title passes from the United States to the State." Section 794, Comp. Stat. Wyo. 1920.

In the Idaho statute accepting the Carey Act there is a section in the same terms as the section of the Wyoming statute just quoted. In Lakeview Canal Co. v. Manufacturing Co., 31 Wyo. 182, 224 P. 853, the Supreme Court of Wyoming said:

"The laws of the State of Idaho are substantially the same as those in this State, in relation to Carey Act lands."

When the State of Wyoming issued its permit to raise the dam it knew that the 400,-000 acre feet of water to be impounded was to be used on the two projects in Idaho. The

application for the permit said so. The fact that Snake River is an interstate stream does not change or affect the rights of Idaho appropriators. They have the same rights that they would have had if their lands had been in Wyoming. In Weiland v. Pioneer Irrigation Co., 259 U. S. 498, 42 S. Ct. 568, 66 L. Ed. 1027, the suit was brought by landowners in Nebraska against officials of the State of Colorado whose duty it was to see that water was distributed from the stream to appropriators for irrigation according to their rights. The stream flow was from Colorado into Nebraska, and the canal to irrigate Nebraska lands had been taken out of the stream on the Colorado side. It was claimed by Colorado appropriators from the same stream that their rights to water to irrigate their lands were different and superior to the rights of the Nebraska appropriators. As to that contention the Supreme Court said:

"Both of the lower courts ([C. C. A.] 238 F. 519 [D. C.] 236 F. 790) held that the presence of the State line did not affect the superiority of right and enjoined the Colorado State officials from treating the appellee in the distribution of water otherwise than it would be treated if the canal were wholly within the State of Colorado and all the lands irrigated therefrom were in that State. The question thus presented is so fully disposed of on principle and authority in the opinion of the court this day announced in No. 3 Original, Wyoming v. Colorado [259 U. S.] ante, 419 [42 S. Ct. 552, 66 L. Ed. 999], that further discussion of it would be superfluous and upon the authority of that decision the decree of the Circuit Court of Appeals is affirmed." See also Bean v. Morris (C. C. A.) 159 F. 651; Willey v. Decker, 11 Wyo. 496, 73 P. 210, 100 Am. St. Rep. 939; Perkins County v. Graff (C. C. A.) 114 F. 441. In addition to the provisions of the Wyoming and Idaho statutes which make water rights for irrigation appurtenant to the lands to which the water is applied, that is the general rule in the western States where irrigation is practiced. Rickey L. & C. Co. v. Miller & Lux (C. C. A.) 152 F. 11, 14, and cases there cited.

On the facts stated, settlers on lands in the two Carey Act projects acquired water rights for the irrigation of their lands. The right is said to be a right in a natural resource, hence classed as real estate. Wiel (3d Ed.) § 283. It is not land, but when used for irrigation it becomes appurtenant to the land to which it is applied, an incorporeal hereditament. An appurtenant thing is attached to and belongs to another thing as the principal thing. Harris v. Elliott, 10 Pet. 25, 9 L. Ed. 333. And its situs is the same as that of the principal thing. In Cooley on Taxation (4th Ed.) § 568, it is said:

"So far as taxing water rights is concerned, it is a generally conceded principle that water rights and water power are not taxable independently of the land to which they are appurtenant or incident." Mr. Wiel says (section 284) that water rights should not be assessed separately from the lands to which they are appurtenant. This is the rule in Wyoming. In Ver Straten v. Board of Commissioners, 246 P. 916, the Supreme Court of Wyoming said:

"Water rights appurtenant to lands are usually taxed with the lands, and not listed or valued separately. Water rights not appurtenant to taxed lands may no doubt in some circumstances be 'property' subject to taxation [citing cases]. An entryman of lands under a Carey Act project must have a contract for a water right with the company that has undertaken to furnish the water for reclamation of the lands. C. S. Wyo. 1920, § 788. This water right becomes appurtenant to the land when title passes from the United States to the state. C. S. § 794."

In Hicks v. Cheyenne Land & Live Stock Co., 4 Wyo. 502, 35 P. 475, that court said:

"Thus it seems that the doctrine is very general, in the States of the arid region, that a water right becomes appurtenant to the land upon which the water is used, and the ditch, water pipe, or other conduit for the water becomes attached to the land, either as appurtenant or incident to the land, and necessary to its beneficial enjoyment, and therefore becomes part and parcel of the realty. * * * The appurtenance is subject to the same conditions as the principal thing, subject to its liabilities and entitled to its exemptions."

In Hale v. Jefferson County, 39 Mont. 137, 101 P. 973, the Supreme Court of Montana said on this subject:

"Viewed as independent property rights, ditches and the right to use the water conveyed by them are property subject to taxation; but, when made appurtenant to lands, they have no independent use. So situated and used, the value of this species of property enters as an element into the value of the corpus or principal estate to which it is attached or appurtenant, and bears its proportionate burden of taxation by the added taxable value which it gives to the principal estate."

There has never been a severance of these water rights from the Idaho lands. There is no property or property right involved in these suits, except the right to continue to

apply the impounded waters to the lands in Idaho to which they have become appurtenant. This right constitutes property—not personalty, but partaking of the nature of real estate—an incorporeal hereditament with its situs in Idaho; and, in our judgment, it is not taxable in the State of Wyoming. Cooley on Taxation (4th Ed.) § 94; Wharton on the Conflict of Laws (3d Ed.) vol. 1, § 80a; Louisville, etc., Ferry Co. v. Kentucky, 188 U. S. 385, 23 S. Ct. 463, 47 L. Ed. 513.

It is the contention of intervener that the tax levies were and will continue to be a burden on the contract between the Kuhn Company and the United States and will interfere with its right to aid in the reclamation of its arid lands. The learned District Judge held this contention to be without merit, and we are satisfied with his able discussion of that branch of the case. 8 F.(2d) 739, 745, 746. But we think the petitions in intervention should have been dismissed without prejudice.

For the reasons stated the court erred in finding against the original plaintiffs in the four suits and in dismissing their complaints. It is ordered that all of the decrees be reversed, that they be set aside and vacated, that decrees be entered for complainants as prayed in their complaints, and that the petitions in intervention be dismissed without prejudice against intervener.