## UNITED STATES v. POWER COUNTY, IDAHO, et al.
### No. 1015.

District Court, D. Idaho, E. D.

Dec. 14, 1937.

[1] No opinion for publication.

John A. Carver, U. S. Dist. Atty., and E. H. Casterlin and Frank Griffin, Asst. U. S. Dist. Attys., all of Boise, Idaho, and B. E. Stoutemyer, Dist. Counsel, Bureau of Reclamation, of Portland, Or.

Terrell & Bistline, of Pocatello, Idaho, for defendants.

CAVANAH, District Judge.

The action is one to quiet title to real property of the United States involving the validity of assessing it for taxes, during the years 1936 and 1937, and enjoining the defendants as officers of the county from proceeding further, and for a declaratory judgment. The facts are agreed upon and appear to be that the Secretary of the Interior caused surveys and investigations to be made of the Minidoka reclamation project and the American Falls Reservoir, the dam of which is located on the Snake river in Power County, Idaho, for irrigation and reclamation, primarily of public lands of the United States. The major part of the town of American Falls was within the area to be flooded by the reservoir. Congress appropriated $1,735,000 in addition to an unexpended balance for the construction and extension of the Minidoka project and granted authority to the Secretary to purchase or condemn and to improve suitable land for the new townsite to replace the portion of the town of American Falls which was flooded by the reservoir and for the removal of buildings to the new site, to plat and to provide appraisal of lots in the new townsite, and exchange and convey such lots in full or part payment for property to be flooded by the reservoir, and to sell for, not less than the appraised valuation, lots not used for such exchange. In 1921 the United States acquired by purchase and condemnation the fee-simple title to certain lots adjacent to the town of American Falls which included the land now embraced in the lots and blocks involved in the present action. In the townsite the Secretary caused streets to be graded, constructed sidewalks, water and sewer systems, and planted trees. The lots were, in 1936, carried on the real property assessment roll of the county as real estate belonging to the United States, and for that reason no levies were made against them. During that year the Board of County Commissioners adopted a resolution on the advice of the county attorney, instructing the assessor to assess the American Falls Reservoir District on their equity in all lots in the district, which they held in the name of the United States. The lots were then carried on the personal property assessment roll of the county for the purpose of assessing as personal property of the district whatever interest or equity the district may have had in them, and there was then extended, on the personal property roll against the personal property, taxes on the interest of the district. The county and its taxing officers spread on the personal property tax roll for the year 1936 as personal property taxes against the interest of the district in the lots in the sum of $3,827.31, which was not paid, and a penalty was added of $76.50. Thereafter, on February 1, 1937, the assessor issued a warrant of distraint to the sheriff commanding him to make good the taxes, plus a charge of 25 cents for issuing the warrant, and a commission of $156.16 for collecting the taxes, and interest of 8 per cent. per annum, by selling the personal property liable for the taxes being the equity of the

district. Thereafter, on February 16, 1937, the sheriff notified the district that he held a distraint warrant for the taxes on the property for 1936, and that, unless the same were· paid on or before March 30, 1937, he would sell the property against which the personal property taxes were assessed and levied. The intention of the sheriff is that he will proceed to execute the warrant by noticing and offering for sale the property described on the personal property assessment roll unless restrained from doing so. The assessment roll on which the equity of the district in the lots were assessed are .public records of the county, and the name of the United States does not appear on the personal property tax roll in connection with the description of the lots.

The defendants assert that it is their intention to continue the practise adopted during 1936 for placing the lots on the personal property rolls for the purpose of taxing them. The. district is one of the parties who have contracted with the United States for annual delivery of pro rata shares of the stored water as made available from the reservoir. In June, 1923, the United States and the district entered into the contract which relates to the construction of the reservoir, and whatever equity the district has in the lots is based upon and grows out of that contract.

The estimated original construction charges were paid in full by the district prior to the construction of the reservoir which entitled it to a storage capacity for 457,421 acre feet. Thereafter, and pursuant to the terms of the contract, the district exercised its option for additional storage capacity of 20,000 acre feet, which was to be paid for in installments until the total additional storage of $126,493.57 was paid, and on which has been paid the sum of $48,520, leaving a balance unpaid but not yet due of $77,973.57 and interest. The district is also obligated to pay annual operations and maintenance costs of the reservoir.

It further appears in the stipulation of facts that an actual controversy exists between the parties, in that the plaintiff contends that the district has no equity in the real estate involved as a result of the contract of 1923, which is the subject of the personal property tax levied and assessed by the county, and that the full and complete title in fee simple to the lots is in the United States, and is not subject to taxation, and that the spreading ·of personal property taxes against the alleged equity of any person in the lots on the rolls of the county constitutes an invasion of the rights and property of the United States and a cloud on its property, while it is alleged and affirmed by the district that it has an equity in the lots by reason of the contract of 1923 and the exercise of the option of 1931, and that the equity constitutes personal property and as such is taxable.

There seems to be no dispute as to Congress having power to enact the Act of March 4, 1921, 41 Stat. 1367, 1403, c. 161, granting to the Secretary of the Interior authority to purchase or condemn the land in question for the purpose stated and whenever that is done the fee-simple title is in the United States until it disposes of it, Brown v. United States, 263 U.S. 78, 44 S.Ct. 92, 68 L.Ed. 171; and, that being the case, we approach the question presented, whether the state has power, by taxation, to retard or burden the operations of the constitutional laws enacted by the Congress to carry into execution the powers vested in the general government. In the celebrated case of McCulloch v. Maryland, 4 Wheat. 316, 429, 4 L.Ed. 579, Chief Justice Marshall said that "the power to tax involves the power to destroy," and held that the property of the United States is not subject to taxation by the states or any subdivision thereof. Since that decision the Supreme Court has held on numerous occasions that neither the states or their subdivisions have power to tax property belonging to the United States and has aptly said when in quoting Chief Justice Marshall: "If the states may tax one instrument employed by the government in the execution of its powers,· they may tax any and every other instrument. They may tax the mail; they may tax the mint; they may tax patent-rights; they may tax the papers of the custom-house; they may tax judicial process; they may tax all the means employed by the government to an excess which would defeat all the ends of government. This was not intended by the American people. They did not design to make their government dependent on the states." Van Brocklin v. Anderson, 117 U. S. 151, 6 S.Ct. 670, 674, 29 L.Ed. 845. See Mullen Benevolent Corporation v. United States, 290 U.S. 89, 54 S.Ct. 38, 78 L.Ed. 192; Irwin v. Wright, 258 U.S. 219, 42 S. Ct. 293, 66 L.Ed. 573. Immunity from taxation rests upon the sovereign right of the federal government to hold property tax free, and it includes freedom from all taxa-·

tion as a charge against the property when the United States acquires it. United States v. Pierce County, D.C., 193 F. 529; United States v. City of Buffalo, 2 Cir., 54 F.2d 471.

█ The Constitution of the State of Idaho by article 7, § 4, and article 21, § 19, definitely settles the question as to the property of the United States being exempt from taxation.

The title to the lots and the reservoir involved is still in the United States and remains there until otherwise provided by Congress. Twin Falls Canal Co. v. American Falls Reservoir District No. 2, 9 Cir., 59 F.2d 19. The lots when acquired by the United States became a necessary and proper part of the reservoir enterprise and incidental thereto, and because of that fact the United States was authorized to acquire title thereto. The only interest the district has in the reservoir until title thereto is passed by Congress is in the right of the district to receive water which is delivered to it by the United States from the reservoir and to the use and benefit of certain amount of water storage capacity in the reservoir which was constructed and is still owned and operated by the United States under an Act of Congress and the contract of June 15, 1923, as amended on October 10, 1924. North Side Canal Company, Ltd., v. State Board of Equalization of Wyoming, 8 Cir., 17 F.2d 55. Whether the lots are a proper part of the reservoir or not, it would make no difference, as the United States still owns them and the legal title remains in it until otherwise provided by Congress.

█ This brings us to the controlling thought, Can the equity of purchasers of the lots and blocks where the fee-simple title still remains in the United States be classified as personal property and subject to taxation? The theory of the defendants is that, as the district has an equity in the lots and is using and enjoying them, and such equity is subject to taxation as personal property under the statute of the State for the purpose of taxation, "Personal property for the purposes of taxation shall be construed to embrace and include, without especially defining and enumerating it, all goods, chattels, stocks and bonds, equities in state lands, easements, reservations, and all other matters and things of whatsoever kind, name, nature or description, which the law may define or the courts interpret, declare and hold to be personal

property under the letter, spirit, intent and meaning of the law, for the purposes of taxation, and as being subject to the laws and under the jurisdiction of the courts of this state," section 61-109, I.C.A., and one who has a right to it and its use and enjoyment should not avoid his share of taxation by using the legal title of the government. The observations made in the case of the United States v. Canyon County, D.C., 232 F. 985, 989, are relied upon where an effort by the United States to enjoin the defendant Canyon County and its officers from taxing lands on the interest of settlers therein, in what is known as the Boise Reclamation Project and in which one of the classes of property was entries in which entrymen had made proof before the land office as required by the general homestead law, but had not fully complied with the additional provisions of the Reclamation Act, as amended, 43 U.S. C.A. § 372 et seq., requiring that at least one-half of the irrigable acreage of the entry shall be irrigated with reclamation and payment made for water rights. It will be observed that the facts in the Canyon County Case are not analogous to those involved here, for there the patent to the lands within the reclamation project which was issued to homestead entrymen by the United States conveyed legal title under the act of Congress, and the government only reserved a prior lien on the land and water rights as security for the payment of all sums due or to become due on the water rights. It was there properly held that, as the legal title had passed from the United States to the entrymen and the government had only a prior lien for the payment of the balance for the water right, the lien of the tax was subject to the prior lien reserved by the government.

The case of Baltimore Shipbuilding & Dry Dock Company v. Mayor of Baltimore, 195 U.S. 375, 25 S.Ct. 50, 49 L.Ed. 242, does not decide contrary to the view that, where the legal title to the land remains in the United States and it has not been paid for in full, a tax cannot be levied upon it, as in that case it appeared that the United States had conveyed the land for dry dock purposes with merely a reserved right to the use of the dry dock.

So also is the case of Wisconsin Central Railroad Company v. Price County, 133 U.S. 496, 10 S.Ct. 341, 33 L.Ed. 687, where the government had ceased to have any interest in the land which justified the withholding of a patent.

Again the case of Northern Pacific Railroad Co. v. Myers, 172 U.S. 589, 19 S. Ct. 276, 43 L.Ed. 564, relied upon by defendants, involved the character of land granted to the railroad company under acts of Congress, 43 U.S.C.A. § 882 et seq. in which it was expressly provided that the land shall not be exempt from taxation. The grant to the railway company was complete in conveying title without any more to be paid or act to be done going to the foundation of the right. The court there cites with approval the cases of Kansas P. Railway Company v. Prescott, 16 Wall. 603, 21 L.Ed. 373; Union P. Railway Company v. McShane, 22 Wall. 444, 22 L.Ed. 747, and Northern Pacific Railroad Company v. Traill County, 115 U.S. 600, 6 S.Ct. 201, 29 L.Ed. 477, where it was decided that the only instance where land might be taxed and sold of the United States, before patent issued, is where the right to the patent was complete and the equitable title was fully vested in the party without more to be paid or any act to be done going to the foundation of the right.

It is apparent that the facts here do not come under the conclusions reached in the cases cited by the defendants for the attempted levy made upon the lots in the district is where the United States has not been paid in full for the lots which grants to the purchaser a right to the conveyance, nor is the equitable title fully vested in them.

The statute of Idaho defining what property is subject to taxation does not define any equity interest in real property (other than state land) that can be assessed as personal property. The only equities in land mentioned in the statute are "equities in state lands" and not Government land. The portion of the statute defining personal property as "And all other matters and things of whatsoever kind, name, nature or description, which the law may define or the courts interpret, declare and hold to be personal property under the letter, spirit, intent and meaning of the law, for the purposes of taxation," cannot be interpreted to be personal property under the views expressed by the Supreme Court of the United States when concluding under what circumstances are government lands taxable.

The placing of the lots upon the assessment roll of the county with a definite amount against a claimed equity of persons in them clearly shows a cloud upon the

title of the United States to the lots, and a decree will be entered under the facts here to the effect that the United States holds its property free from tax proceedings or tax liens, and costs.